458 P.2d 843

**Mildred WILLIAMSON, Plaintiff-Appellant,**

v.

**PIGGLY WIGGLY SHOP RITE FOODS, INC., Defendant-Appellee.**

**No. 333.**

Court of Appeals of New Mexico.

Sept. 5, 1969.

**592**

Charles G. Berry, McAtee, Marchiondo & Michael, Albuquerque, for appellant.

Clarence R. Bass, Shaffer, Butt & Bass, Albuquerque, for appellee.

## OPINION

OMAN, Judge.

Plaintiff brought suit for injuries allegedly sustained by her as a proximate result of slipping and falling in defendant's supermarket. She claimed to have slipped on a grape which was on the floor in the produce department. She appeals from a judgment entered for defendant pursuant to a directed verdict.

She relies upon three points for reversal. In her first point, which she has broken down into sub-points, she claims that the evidence adduced by her would support a jury verdict in her favor. If her contention be true, then the trial court erred in directing a verdict against her. Simon v. Akin, 79 N.M. 689, 448 P.2d 795 (1968); McGuire v. Pearson, 78 N.M. 357, 431 P.2d 735 (1967); Wahlin v. Shelby, 76 N.M. 196, 413 P.2d 475 (1966); Merchant v. Worley, 79 N.M. 771, 449 P.2d 787 (Ct.App.1969). On the other hand, if the evidence and the reasonable inferences to be drawn therefrom are plain and not open to doubt by reasonable men, then there was no issue of fact to be presented to the jury. Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966); Lewis v Barber's Super Markets, Inc., 72 N.M. 402, 384 P.2d 470 (1963); Merchant v. Worley, supra; Smith v. Loos, 78 N.M. 339, 431 P.2d 72 (Ct.App.1967).

■ Plaintiff recognizes that the mere presence of a slick or slippery spot on a floor does not in and of itself establish negligence, for this condition may arise temporarily in any place of business [Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712 (1958); Kitts v. Shop Rite Foods, 64 N.M. 24, 323 P.2d 282 (1958)]; negligence on the part of the owner or occupier of business premises may not be presumed merely from the fact that an injury has been sustained by one while rightfully upon the premises [Barrans v. Hogan, 62 N.M. 79, 304 P.2d 880, 61 A.L.R.2d 1 (1956); De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630 (1945)]; the law does not impose upon a storekeeper the duty to follow each customer about, dustpan in hand, to gather up debris [Jimenez v. Shop Rite Foods, Inc., 72 N.M. 184, 382 P.2d 181 (1963); Mahoney v. J. C. Penney Company, 71 N.M. 244, 377 P.2d 663 (1962)]; and the presence or absence of negligence on the part of the business proprietor in many of the slip and fall cases in New Mexico seems to have been determined upon whether " * * * the proof established as a fact or permitted a reasonable inference that [a] 'messy condition * * * was a continuing occurrence—in effect a pattern of conduct * * *' * * *." [Lewis v. Barber's Super Markets, Inc., supra; Shaver v. Ray Bell Oil Co., 74 N.M. 700, 397 P.2d 723 (1964)].

Plaintiff admits that in the present case " * * * there is no evidence of a 'messy condition' or 'pattern of conduct,' nor was any attempt made to establish one. * * *" Therefore, if this case falls on either side of the liability line noted in Lewis v. Barber's Super Markets, Inc., supra, and Shaver v. Ray Bell Oil Co., supra, it falls on the side of non-liability.

■ Unquestionably, liability of the proprietor of a business, as the possessor of the premises, is not determined alone by the maintenance of a "messy condition" or a "pattern of conduct." The distinction between the two lines of slip and fall cases in New Mexico, observed by our Supreme Court in Lewis and Shaver, was not intended as a statement of the only conditions to be considered on the question of a proprietor's negligence. He is liable for physi-

cal harm caused to his invitees by a condition on his premises, if, but only if, he:

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

Restatement (Second), Torts 2d, § 343 (1965); Dempsey v. Alamo Hotels, Inc., 76 N.M. 712, 418 P.2d 58 (1966); Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966); Lovato v. Plateau, Inc., 79 N.M. 428, 444 P.2d 613 (Ct.App.1968).

Plaintiff relies upon a claimed inference of negligence on the part of defendant in one or more of the following respects:

"1. That the presence of the grape on defendant's floor which caused plaintiff to slip and fall is traceable directly to the negligence of defendant's employees.

"2. That the floor in defendant's store was designed so as to conceal the grape upon which plaintiff stepped and slipped.

"3. That the lighting of defendant's store was constructed so as to create an optical illusion and prevent plaintiff from seeing the grape upon which she stepped and slipped."

The evidence, material to plaintiff's contention that the presence of the grape on the floor is traceable directly to the negligence of defendant's employees, is as follows:

(1) As above stated, it is conceded by plaintiff that "no messy condition" or "pattern of conduct" was proven, or even attempted to be proven.

(2) The supermarket personnel regularly and continually maintain the floor in a clean condition.

(3) At about 8:30 a. m. on the day plaintiff fell, the manager of the produce department had checked the display cases, " * * * put out any produce that needed to be put out, * * *", taken out bad produce and replaced it with fresh produce, "watered it down," swept the floor, and, thereafter, gone over the floor with a dry mop (actually, it was a wet mop with most of the water wrung out, so that it was damp when applied to the floor).

(4) The supermarket was open to the public at 9:00 a. m., and plaintiff fell at about 9:30 or 9:45 a. m., when she stepped on a grape.

(5) The manager of the produce department and the manager of the meat department both testified they had seen no customers in the area, and the one testified he had seen no customers in the store. However, both testified they were in the back room drinking coffee when they heard someone cry out. They went out into the produce area and found plaintiff lying on the floor.

(6) The produce manager testified he had been through the area several times after concluding the mopping and prior to going for coffee and had seen nothing on the floor. He was unable to account for the presence of the grape, unless someone knocked or dropped it there.

From this evidence plaintiff contends:

" * * * the jury could reasonably infer that the grape was dropped there by [the manager of the produce department]; or, in view of the fact that he was in the area several times after he had cleaned but prior to the time of the accident, that he was negligent in carrying out his inspection and in failing to find and remove the grapes from the floor."

The testimony of plaintiff is that she slipped on a grape which was crushed by her, and the produce manager and other witnesses saw a whole grape on the floor after she fell. Therefore, there is testimony that two grapes were on the floor. Unless their presence upon the floor is sufficient upon which to base an inference that the produce manager dropped them, or overlooked them, then plaintiff must fail in her contention.

The presence of the grapes on the floor, is just as consistent with an inference that they became detached by themselves from a bunch, or were dropped by someone unknown, as it is to infer that the produce manager dropped or overlooked them. It is true he was in the area cleaning and inspecting, but there is nothing, other than his presence in the area, to suggest he dropped them. It is possible he overlooked them, but it is equally possible that they were not present on the floor when he passed through the area the last time before going for coffee. We have an absence of evidence as to how or when the two grapes got on the floor, but the evidence is clear that the floor had been swept and mopped within about an hour of the time plaintiff fell, and that the produce manager had been in the area several times between the mopping and the time of the accident and had seen nothing on the floor.

■ The facts in this case, concerning the unexplained presence of the object or substance causing the harm, are similar to those in De Baca v. Kahn, supra, and Lovato v. Plateau, Inc., supra. In those cases it was concluded that no inference of negligence on the part of the proprietor could properly be reached by reason of the unexplained presence of an oil spot on which plaintiff slipped in the De Baca case, or the unexplained presence of the gasoline or other flammable substance which became ignited in the Lovato case. We reach the same conclusion under the evidence in this case. See also Jimenez v. Shop Rite Foods, Inc., supra, wherein the dangerous object was a grape, just as in the present case.

■ Under the evidence in the present case, we are of the opinion that reasonable minds could not differ on the question of defendant's lack of knowledge of, or exercise of reasonable care to discover, the presence of the grapes on the floor. The only evidence to even suggest knowledge, or failure to exercise reasonable care to discover, was the presence of the grapes on the floor at the time plaintiff fell, and the fact that the produce manager had been

through the area several times prior to the entry therein of plaintiff. If reasonable minds may not differ, then the question should be withdrawn from the jury. Loucks v. Albuquerque National Bank, supra; Lewis v. Shop Rite Foods, Inc., supra; Tabet v. Sprouse-Reitz Co., 75 N.M. 645, 409 P.2d 497 (1966); Merchant v. Worley, supra; Smith v. Loos, supra.

Plaintiff next contends negligence on the part of defendant could properly be inferred from her claim that " * * * the floor * * * was designed so as to conceal the grape upon which [she] stepped and slipped."

The store was relatively new—some two or three years old—with new equipment. The floor was "terrazzo," which is used frequently in places of business. It is composed of marble chips, porcelain, cement aggregate, and water, which are mixed in a container and poured on a concrete slab or hardwood floor. After the mixture has hardened, it is ground down with a machine. By the mixing of different colored chips, a great variety of colors may be obtained. The colors on the floor here in question were black, yellow, gray, and red or purple. The red or purple portions thereof, are described as specks, and were about the same color as the grapes.

This type of floor, and particularly the floor in question, is not slick, but it does have a "definite sheen or shine to it," and it has the appearance of being clean, even though it may not be. However, there is not the slightest evidence in this case that the floor was not clean, except for the presence of the one, and probably the two, grapes thereon at the time of plaintiff's fall. Also, there is not the slightest evidence that the grapes were concealed or rendered difficult to see by reason of the red or purple "specks," or by the "sheen or shine," of the floor surface. In fact, no one had any difficulty in seeing the whole grape on the floor immediately after plaintiff's accident.

■ No reasonable inference can be drawn from the evidence that the design of

the floor was such as to conceal the grape upon which plaintiff stepped and slipped. A reasonable inference is a conclusion arrived at by a process of reasoning. This conclusion must be a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in the light of common knowledge or common experience. Gray v. E. J. Longyear Company, 78 N.M. 161, 429 P.2d 359 (1967); Bolt v. Davis, 70 N.M. 449, 374 P.2d 648 (1962); Lovato v. Plateau, Inc., supra.

Plaintiff's next contention is that the "* * * lighting of defendant's store was constructed so as to create an optical illusion and prevent plaintiff from seeing the grape upon which she stepped and slipped."

The so-called optical illusion arises solely from the fact that a photographer's light meter showed the light at eye level to be 50% to 60% more intense than at floor level, and that the fixtures, produce, etc., cast shadows.

The photographer would not relate the cause of these meter readings to any effect upon the human eye, other than to say at certain points it would be "* * * easier to see * * *" or it would be "* * * easier to see something over, or in the center of the aisle than it would over on one side or the other."

We all know that objects cast shadows and that the density of shadows vary with the size thereof, the direction from which the light strikes the objects making them, etc. We also know the human eye has the capacity to make adjustments to differences in light intensity, and that the effect of such differences on the capacity to see depends on a number of prevailing conditions. Here the photographic exhibits, which we are asked to consider, fail to demonstrate any appreciable shadow or dimness at any point. The lights are directly above and extend the length of the main aisles. It was in one of these aisles where plaintiff fell.

There had never been any complaints about the lights, and there is no evidence from which it can reasonably be inferred that the lighting was inadequate or insufficient to see a grape upon the floor. As above stated, the witnesses had no difficulty in seeing the grape thereon shortly after plaintiff's fall.

The evidence does not support plaintiff's contention that the lighting created an optical illusion and prevented plaintiff from seeing the grape upon which she stepped.

Plaintiff's second point is that the trial court erred in excluding testimony that the floor surface would appear to be clean, when, in fact, it was unclean.

There is doubt as to whether plaintiff made a proper offer or tender of the testimony she claims the trial court improperly excluded. However, we do not place our rejection of her claim of error upon this ground.

As above stated, there is absolutely no evidence that the floor was not clean at the time of plaintiff's accident. When plaintiff made her tender, objection was made thereto. The court, thereupon, made express inquiry of her counsel as to whether she proposed to offer evidence that the floor was dirty. After conferring with plaintiff, her counsel announced that she was not, and she did not. We fail to understand how plaintiff could have been prejudiced by the rejection of her offer to show the floor could have appeared to be clean, when in fact it was not, since she made no effort to prove it was not as clean as it appeared. As already stated, all the evidence is to the effect that the floor was clean.

Plaintiff's final point is that the trial court erred in taking the jury to the supermarket for the purpose of viewing the scene of the accident. However, as conceded by plaintiff, no prejudicial error was committed, since the court directed a verdict.

The judgment should be affirmed.

It is so ordered.

SPIESS C. J., and HENDLEY, J., concur.