824 P.2d 1058

**Maria Rita GUTIERREZ,
Plaintiff–Appellee,**

v.

**ALBERTSONS, INC., Defendant–
Appellant.**

**No. 10954.**

Court of Appeals of New Mexico.

Nov. 21, 1991.

Certiorari Denied Jan. 7, 1992.

David Greer, Albuquerque, for plaintiff-appellee.

Matthew P. Holt, Sager, Curran, Sturges & Tepper, P.C., Las Cruces, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant Albertsons, Inc. appeals the judgment on a verdict in favor of plaintiff Maria Rita Gutierrez (Gutierrez) in this slip-and-fall action. Albertsons makes the following arguments on appeal: (1) there was insufficient evidence to support the jury's finding that Albertsons was negligent; (2) admission of Gutierrez' testimony about the absence of maternity care insurance coverage for her was reversible error; and (3) Gutierrez' failure to sue Albertsons' allegedly negligent employee barred her claims against it as a matter of law. We affirm.

FACTS.

On May 25, 1984, Gutierrez, who was five and a half months pregnant, was shopping in aisle four of Albertsons, moving toward the front of the store. While reaching for an item on a shelf, she slipped and fell, landing on her back. She did not remember anything after she reached for the item until she was on the floor. She did not know what caused her to fall.

A nurse who was in the same aisle, also moving toward the front of the store and ahead of Gutierrez, heard her hit the floor. She turned around and saw Gutierrez on her back. She saw a puddle of clear liquid approximately six inches wide by two and a half to three feet long next to Gutierrez. Gutierrez was near the center of the aisle and the puddle was closer to the side. The nurse saw no streaks or footprints in the water.

Mr. Moulton, the assistant store manager, was the second person to arrive on the scene. He saw the water, which he described as one or two puddles, each about six inches in diameter and adjacent to where Gutierrez was lying. He was asked about the source of the liquid and said he did not know where it came from. He checked a lobster tank that was six to eight feet away at the end of aisle four, but he found no trail of water between the tank and the puddle and no leak in the tank. When asked during direct examination about the "appearance of the puddle at the time of the accident[,]" he said "I don't remember seeing foot marks. I remember a couple cart tracks." Subsequently, on redirect, he described what he saw as "some wheel marks."

Mr. Kell, the store manager, described the liquid as less than four ounces, covering an area of one foot by three feet. He said that it was in several spots, rather than one solid body. He tasted the liquid to see if it contained salt, which was added to the water in the lobster tank. He determined that it was water without salt. He also checked the tank for leaks and found none, and was unable to determine the source of the water. He took a sample of the liquid.

Mr. Lujan, a courtesy clerk, testified on direct examination that when Gutierrez fell, he was summoned over the intercom and that, when summoned, he was getting a spot or wet mop. He also said that he saw Gutierrez on the floor. When asked during direct examination to describe the water, he said that it was "streaked," and

he said "carts had already went over it and everything." On cross-examination he testified that the streaks he saw were there after Gutierrez had been carried out of the store.

Both the nurse and Gutierrez testified that while Gutierrez was lying where she fell, waiting for an ambulance to arrive, someone with a mop and bucket began mopping up the water that was next to her. She testified that she overheard someone say: "'Look at all that water.'" Moulton identified himself, Kell, and Lujan as the store personnel in the aisle after the fall and said that he believed he told Lujan to bring a mop. Gutierrez said that she was asked to move so that he could mop around her.

Moulton and Kell testified about the store's policy regarding inspections and cleaning. They said the store was cleaned every night by a professional janitorial service and ordinarily, but not always, swept again the following morning. When a new shift of clerks arrived at 4:00 each afternoon, one of their first tasks was to sweep the store before the rush at shortly after 5:00. Also, each store employee was instructed to inspect the floor for possible debris or foreign substances whenever walking through the store for any reason.

Lujan testified at trial on direct examination that he swept the entire floor before the accident and that he swept the aisle in question ten to fifteen minutes before the accident. He said there was no liquid on the floor at that time. Kell testified that he saw Lujan begin to sweep the floor of the store and saw him finish it before the fall. He did not see him sweep aisle four. Moulton said that he saw Lujan sweeping part of the aisle, although he did not determine if it was the part where Gutierrez fell.

When pressed on direct examination, Lujan testified that he was "not sure" if he swept aisle four, but had he started sweeping at the last aisle, he would have continued through aisle four. During cross-examination, Albertsons arranged for an audiotape to be played; the tape had been used to record a telephone interview between Lujan and a representative from Al-

bertsons' home office risk management division. The conversation occurred approximately two months after the accident. During that conversation, an exchange occurred in which Lujan may have misunderstood what he was being asked. Nevertheless, Lujan's initial responses indicated that he had swept only aisle four; after being asked if there was something on aisle four that required clean-up, he then modified his testimony and said he had swept all aisles.

On the same tape, Lujan indicated that he was in the back at the time of the accident getting a mop because the floors were "a little bit dirty." At trial, on direct examination, he testified he was getting a mop "to clean up produce, because produce gets—the floor gets real dirty, real black." When pressed, however, he testified that he didn't remember why he was getting the mop.

Albertsons moved for a directed verdict at the close of the evidence presented on behalf of Gutierrez. The record on appeal includes a partial transcript; that transcript contains the testimony offered on behalf of Gutierrez, as well as the record made in connection with the motion for directed verdict at the close of Gutierrez' case. The record does not indicate whether Albertsons presented any evidence.

After the jury returned its verdict, Albertsons moved for judgment, notwithstanding the verdict. The motion was denied.

## I. SUFFICIENCY OF THE EVIDENCE.

The parties seem to agree that the controlling law on the matter of Albertsons' negligence stems from *De Baca v. Kahn*, 49 N.M. 225, 161 P.2d 630 (1945). The supreme court held in that case that a slip-and-fall plaintiff must prove not only that there was a dangerous condition in a defendant's premises, but also that the defendant knew or had reason to know of the condition. *Id.; see also Barakos v. Sponduris*, 64 N.M. 125, 325 P.2d 712 (1958); *O'Neil v. Furr's, Inc.*, 82 N.M. 793, 487 P.2d 495 (Ct.App.1971).

In *O'Neil*, this court articulated the duty owed by a store owner to a business invitee who is injured from a slip-and-fall action on the store owner's premises. The court stated:

> In order to find one negligent towards his business invitees it is necessary that the evidence or reasonable inferences therefrom establish a dangerous condition which either is known or should have been known to the proprietor; that the dangerous condition is such that the owner realizes that his invitees would not discover the danger for themselves; and with such knowledge the proprietor fails to exercise reasonable care to protect his invitees.

*Id.*, 82 N.M. at 795, 487 P.2d at 497. *See generally* Sonja A. Soehnel, Annotation, *Liability of Operator of Grocery Store to Invitee Slipping on Spilled Liquid or Semiliquid Substance*, 24 A.L.R.4th 696 (1983). *Compare* SCRA 1986, 13–1318 (Repl.1991) (adopted January 1, 1987, setting forth proprietor's duty in slip-and-fall case where dangerous condition exists from factors not created by proprietor).

The parties also seem to agree that even if the jury was entitled to reject the evidence of due care in this case, Gutierrez still had to come forward with some positive evidence of negligence. Negligence may not be presumed from the fact that an injury occurred. *See generally Williamson v. Piggly Wiggly Shop Rite Foods, Inc.*, 80 N.M. 591, 592, 458 P.2d 843, 844 (Ct.App.1969).

■ As we understand Gutierrez' theory at trial, she asked the jury to find in effect either that (1) the water had been present on aisle four, Lujan had seen it, but he had failed to mark its presence; or (2) the water had been present on aisle four and Lujan had missed it.[1] Albertsons contends that the evidence was insufficient to support either theory because the evidence shows that Lujan swept the floor shortly before the accident and the water was not then present. Alternatively, Albertsons contends that, even if the jury was entitled to disregard Lujan's testimony, then there was no evidence other than the fact of an accident resulting in an injury, and such evidence is not sufficient to support a finding of negligence. We first discuss the sufficiency of the record on appeal to support a conclusion that the appellate claim was preserved.

*A. Preservation.*

The docketing statement indicates that Albertsons preserved its right to question the legal sufficiency of the evidence by filing "motions" for directed verdict. Gutierrez did not challenge that assertion while this case was assigned to the summary calendar, and we accept it as true. *See State v. Sisneros*, 98 N.M. 201, 647 P.2d 403 (1982).

■ Ordinarily, appellant has the burden of producing an appellate record that is adequate to show that the issues raised on appeal were preserved and to facilitate ap-

1. The jury was given an instruction that read as follows:

In this civil action, plaintiff Maria Rita Gutierrez seeks compensation from the defendant, Albertson's, Inc., for damages which the plaintiff claims were proximately caused by negligence.

To establish the claim of negligence on the part of defendant, the plaintiff has the burden of proving at least one of the following contentions:

1. Defendant failed to make a reasonable inspection of aisle 4 of their store located at Zuni and San Mateo in Albuquerque, as was necessary to maintain that aisle in a safe condition.

2. The defendant failed to correct or warn Maria Gutierrez of the presence of a clear liquid on the floor of aisle 4 of their store which was a dangerous condition, and which they knew of, or would have known of had they made a reasonable inspection of their floor.

Plaintiff also contends, and has the burden of proving, that such negligence was a proximate cause of the injuries and damages.

The defendant denies the contentions of the plaintiff and claims that the plaintiff herself was negligent.

There was no objection to the instruction given to the jury. Therefore, those instructions became the law of the case. *Bendorf v. Volkswagenwerk Aktiengeselischaft*, 90 N.M. 414, 564 P.2d 619 (Ct.App.1977). As we understand Gutierrez' theory at trial, she concentrated on proving the second contention. The first contention appears to have been an integral part of the second.

pellate review. *See Nichols v. Nichols,* 98 N.M. 322, 648 P.2d 780 (1982). In this case, that burden would have been most clearly satisfied by ensuring that the transcript included a record of the motion for directed verdict made at the close of the evidence offered on behalf of Albertsons. *Compare Bondanza v. Matteucci,* 59 N.M. 354, 284 P.2d 1024 (1955) (where defendant's motion for directed verdict at conclusion of plaintiff's case was not renewed at close of entire case, defendant waived right to judgment notwithstanding verdict) *with Andrus v. Gas Co. of N.M.,* 110 N.M. 593, 798 P.2d 194 (Ct.App.1990) (if the defendant's motion for a directed verdict at the close of the plaintiff's case is denied and the defendant proceeds to put on its case, its claim of error is waived).

### B. Denial of Motion for Directed Verdict.

We conclude that the trial court did not err in denying Albertsons' motion for directed verdict at the close of Gutierrez' case. There was evidence to support each of Gutierrez' theories. Under these circumstances, it would have been error to grant the motion. *See Jones v. New Mexico School of Mines,* 75 N.M. 326, 404 P.2d 289 (1965).

First, we disagree with Albertsons that the evidence showed as a matter of law that the water was not present on aisle four shortly before the accident. Lujan's testimony, when taken together with the tape-recorded conversation, raised a jury question regarding whether he had swept aisle four at all and, if he had swept it, whether he might have missed the water. Moreover, because both Moulton and Lujan testified that there were cart marks in the puddle of water, there was sufficient evidence to support an inference that the puddle had been in existence for some time. *See Bank of N.M. v. Rice,* 78 N.M. 170, 429 P.2d 368 (1967) (if reasonable minds may differ as to conclusion to be reached under the evidence or permissible inferences, resolution of the issue is for the jury to determine); *see also* SCRA 1986, 13–308 (fact may be proved by circumstantial evidence where evidence gives rise to reasonable

inference of truth of fact sought to be proved).

The more difficult question is whether, if the jury was entitled to disbelieve Lujan's testimony that he had swept aisle four and that there was no water there at that time, there was, nevertheless, sufficient evidence to support both of Gutierrez' trial theories. *See generally State v. Manus,* 93 N.M. 95, 100, 597 P.2d 280, 285 (1979) (discussing limitations on jury's broad authority in treating the proof), *overruled on other grounds, Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982); *see also State v. Corneau,* 109 N.M. 81, 89, 781 P.2d 1159, 1167 (Ct. App.1989) (indicating that with appropriate jury instructions, fragmentation of the evidence can be avoided). Albertsons has argued on appeal that the evidence presented equally possible logical inferences, and thus the jury was required to speculate that Albertsons knew or should have known of the puddle's existence. For this reason, Albertsons urges this court to hold that Gutierrez failed to carry her burden of proof. *See Lovato v. Plateau, Inc.,* 79 N.M. 428, 444 P.2d 613 (Ct.App.1968) (if facts are equally consistent with two conclusions, they tend to prove neither). Albertsons argues that Gutierrez "introduced absolutely no evidence from which a reasonable mind could conclude that Albertson's knew, or should have known, that there was liquid on the floor where Ms. Gutierrez slipped."

We disagree. We think Gutierrez presented sufficient evidence to raise a jury question as to actual as well as constructive notice.

Our task in resolving this issue, as described by the court in *Keene v. Arlan's Dep't Store of Baltimore, Inc.,* 35 Md.App. 250, 370 A.2d 124, 127 (1977), when reviewing a similar contention, is to affirm if there is any reasonable ground that supports the decision of the fact finder at trial. The question is not whether the evidence would have supported a different verdict, but whether there is evidence to support the result that was reached. *Haaland v. Baltzley,* 110 N.M. 585, 798 P.2d 186

(1990). In reviewing the proof, we disregard inferences that do not support the judgment. *Nosker v. Trinity Land Co.*, 107 N.M. 333, 757 P.2d 803 (Ct.App.1988).

In *Keene*, for example, a woman slipped and fell on a "'clear, sleek solution'" in a department store as she walked toward her husband, who had been waiting in a checkout line for fifteen minutes. The only evidence suggesting that the owner in that case had actual notice of the dangerous condition in enough time to remedy it was (1) a cashier's excited utterance immediately after the fall: "'I told them if this wasn't cleaned up, someone's going to fall,'" and (2) her husband's testimony that he did not see the cashier talk to anybody other than the customers going through her line during his fifteen-minute wait. 370 A.2d at 126, 129. The court observed that if the jury believed the husband's testimony, it could have inferred that the cashier gave her warning more than fifteen minutes before the fall. The court conceded that the inferences to be drawn from the evidence were "arguable at best, but the determination of the weight of the evidence is the responsibility of the jury." 370 A.2d at 130.

The Supreme Court of Alabama confronted the issue of constructive notice in *Foodtown Stores, Inc. v. Patterson*, 282 Ala. 477, 213 So.2d 211 (1968). In *Foodtown Stores, Inc.*, plaintiff slipped and fell on some snap beans in a grocery store produce department. There was no evidence regarding the condition of the beans, and the plaintiff did not see anything on the floor before falling. Defendant's employee had been in the back room of the store for about ten minutes when the accident occurred, but testified that before going to the back of the store he had cleaned and swept the produce department, there were six or seven customers in the department when he swept, and when he left he saw nothing on the floor. Another employee testified that he also saw the group of customers. The court held that this evidence was sufficient to submit the case to the jury and affirmed the judgment for the plaintiff, reasoning that the jury could have found the defendant negligent by inferring

that (1) when the employees saw the group of customers, they knew that "vegetable matter could have very easily been knocked ... to the floor" by one of the group, and (2) the employee who swept was removing "debris or vegetable matter from the floor just ten minutes before the accident occurred." *Id.* 213 So.2d at 216.

The court in *Foodtown Stores, Inc.* stressed that all questions of fact in slip-and-fall cases are "for the jury to consider in each case, after proper instructions from the court." *Id.* 213 So.2d at 215–16. *Cf. Cuevas v. W.E. Walker, Inc.*, 565 So.2d 176 (Ala.1990) (conflicting testimony constituted evidence sufficient to raise genuine issues of material fact which precluded entry of summary judgment in favor of defendant in slip-and-fall case).

Here, as in *Keene* and *Foodtown Stores, Inc.*, the jury was presented with alternative possibilities, each supported by evidence. We think the question of whether the evidence was evenly balanced was for the jury, which was instructed subsequently that "[e]venly balanced evidence is not sufficient." *See* SCRA 1986, 13–304 (Repl. 1991). We first discuss the evidence regarding actual notice.

### 1. Actual Notice.

■ The fact that Lujan was in the back of the store to obtain a mop supports an inference that he was retrieving the mop to clean up the puddle in question. Thus, the jury might have determined that Lujan had actual notice of the puddle in sufficient time to have noticed its location or cleaned it up. That is, he noticed the puddle, continued sweeping the store until he was finished, and then proceeded to take care of the puddle.

Kell testified that small amounts of liquid would have been removed with paper towels from another part of the store, while a larger amount of liquid would have been removed with a wet mop. We recognize that Kell testified the amount of water present on aisle four could have been removed with paper towels and that Lujan said he was getting the wet mop to spot-

clean dirty portions of the floor. However, Lujan's testimony was inconsistent, and eventually he testified that he did not know why he was getting the mop. In addition, the puddle was large enough that it caused a bystander to comment on its size. Under these circumstances, we think the jury was entitled to accept the evidence that he was getting a mop and ignore the evidence that he was going to use the mop to clean either other aisles in the grocery section or the produce department. *Cf. State v. Manus; State v. Corneau* (evidence must not be so fragmented as to distort it).

Moreover, the fact that someone was mopping up the spot shortly after Gutierrez slipped and while she lay in the puddle corroborates an inference of actual knowledge. Moulton's testimony supports an inference that it was Lujan who began mopping while Gutierrez lay in the aisle. Because this action seems such an unusual gesture under the circumstances, we think the jury was entitled to infer that Lujan was attempting to complete a task he had set out to do at an earlier time.

### 2. Constructive Notice.

■ The accident occurred during the peak shopping hours on a very busy day of the year: at approximately 5:00 p.m. on the Friday of Memorial Day weekend. The payroll records offered into evidence by Gutierrez indicated that Albertsons was understaffed at the time. Nine of seventeen "courtesy clerks" had quit or had been fired that week. Moulton testified that he made sure there were enough clerks at the checkout stands to achieve the employees' goals of prompt service. The courtesy clerks' responsibility for cleaning was secondary. Moreover, Moulton testified that he was watching Lujan closely on the day of the accident to time his sweeping job and to ensure that he returned to the front of the store as soon as possible to help the customers. Finally, in his deposition, Lujan conceded that he might have missed the puddle.

There was evidence that there were cart wheel marks through the puddle. This evidence, as indicated above, supports an inference that the puddle had been there for some time.

In *Morton v. Lee,* 75 Wash.2d 393, 450 P.2d 957 (1969), the Washington Supreme Court, in reviewing the appeal of the owners of a food market in a slip-and-fall case, considered the issue of whether appellants had actual or constructive notice of the presence of a hazardous condition that resulted in the plaintiff's fall. The court noted:

> Ordinarily, it is a question of fact for the jury, whether under all of the circumstances, a defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care. *Presnell v. Safeway Stores, Inc.,* 60 Wash.2d 671, 374 P.2d 939 (1962). The permissible period of time for the discovery and removal or warning of the dangerous condition is measured by the varying circumstances of each case.

450 P.2d at 959–60. Our review of the record indicates the existence of evidence from which the jury could reasonably determine that Albertsons knew, or should have known, of the existence of the dangerous condition and failed to exercise reasonable care to protect Gutierrez and other business invitees from such hazard.

The issue on appeal regarding constructive notice in this case is whether the jury was entitled to determine that it was more likely that Lujan failed to see the puddle than that the puddle was created in the ten-minute interval between the completion of sweeping and Gutierrez' fall. The jury was entitled to assess the opportunity for human error supported by the evidence that the store was unusually busy and by Lujan's concession that he might have missed the puddle. Based on logical and proper inferences drawn from concededly sparse evidence, the jury was entitled to conclude that it was more likely that the puddle was missed than that it was created in a ten-minute interval. Thus, a finding of constructive notice was permissible.

## II. ADMISSIBILITY OF EVIDENCE.

The substance of the evidence material to this issue was that Gutierrez lost her job

as a result of her injuries, and thus had no insurance coverage for maternity care. Albertsons states that Gutierrez proved this point by stating someone told her that she had maternity coverage, and she was speculating about its absence after she no longer worked for her employer. Albertsons states that it objected to this evidence on unspecified hearsay and best evidence grounds.

The record reveals the following:

Q. [by plaintiff's attorney] What would, if you had not had the fall, what were your plans? How were you going to work at that job if you were five and-a-half months pregnant?

A. [by plaintiff] I was having no trouble doing my rooms. I intended to work till until the last minute, until the last day I could work plus I had my maternity leave.

Q. How did you have maternity leave? How is that plan?

A. They let you go for a couple of months, two, three months and whenever you are ready to come back, you could come back to your job.

Q. Did they have some kind of an insurance with respect to your maternity?

A. I had hospitalization insurance.

Q. What would it cover generally?

A. It would cover—

At this point, counsel for the defense interceded with, "Objection, Your Honor, Best Evidence Rule." There was a bench conference in which Gutierrez' attorney stated that he intended to elicit proof of the fact of lapsed insurance coverage. The attorneys explained why there was no policy of insurance in evidence, and then the attorney for Albertsons stated, "Your Honor, if I could add, the best evidence is also hearsay." The trial court allowed the evidence to come in. Gutierrez' attorney asked whether her maternity expenses would be covered by her employer's insurance and she answered affirmatively, all without further objection from the defense.

■ Albertsons adequately preserved two objections here. The first is an objection on the best evidence rule. This rule is found at SCRA 1986, 11–1002, and is only applicable when a party seeks to prove the contents of a writing. Because Gutierrez only sought to prove the fact of lost coverage rather than the contents of the insurance policies, there was no need for the original policies. *See Kennedy v. Lynch,* 85 N.M. 479, 513 P.2d 1261 (1973). The second preserved objection, which was based on hearsay, was not directed to Gutierrez' testimony. The attorney for Albertsons stated, "the best evidence is also hearsay." The only way to reasonably construe this statement is as an objection to the insurance policies, *i.e.*, the best evidence, as being hearsay. Because the trial court properly refrained from requiring production of the insurance policies, a hearsay objection was not appropriate. Albertsons failed to preserve an issue regarding any other error in admitting Gutierrez' testimony. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 745 P.2d 717 (Ct.App.1987).

■ Gutierrez' testimony on direct examination was not proof of an out-of-court statement. Rather, she stated her personal knowledge of her status as an insured person. Thus, the testimony was not hearsay. *See* SCRA 1986, 11–801(C). Gutierrez stated that someone told her her employer terminated her coverage upon separation from work only during cross-examination by Albertsons. At this point, it became clear that the basis of Gutierrez' earlier testimony was hearsay. However, Albertsons did not renew its objection or move to strike Gutierrez' testimony about lost insurance coverage. By not objecting or moving to strike, Albertsons waived the hearsay issue it raises on appeal.

The jury was free to choose how to weigh this evidence, including the choice of rejecting it in favor of Gutierrez' earlier testimony on direct examination. *Cf. Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 89, 428 P.2d 625, 628 (1967) (where appellant contended on appeal that witness's testimony on direct examination was nullified by his testimony on cross-examination, resolution of discrepancy was for fact finder). Albertsons' appellate com-

plaint that the testimony was speculative is misplaced.

## III. FAILURE TO JOIN EMPLOYEE.

Gutierrez never sued Lujan, the employee who was responsible for cleaning the floor of Albertsons at the time she slipped and fell. Albertsons argues that Gutierrez' failure to sue Lujan within the time allowed by law for such a suit precluded any suit against Albertsons based on vicarious liability for Lujan's acts or omissions. To support this argument, Albertsons reasons that because its liability is derivative of Lujan's, and because a right of action against Lujan no longer exists, Albertsons is not derivatively liable for a right of action against it. *See generally Kinetics, Inc. v. El Paso Prods. Co.*, 99 N.M. 22, 653 P.2d 522 (Ct.App.1982) (discussing effect of dismissal of partnership from lawsuit on liability of partner and company of which partner was wholly-owned subsidiary).

 We do not decide whether *Kinetics, Inc.* applies to this case or whether it is a correct statement of the law because Albertsons failed to preserve this issue. At the hearing on the motion to amend the complaint, Albertsons obtained leave from the trial court to plead release as a defense. However, it never made the "release" argument to the trial court. In arguing its motion for a directed verdict, Albertsons made no reference to any argument that it was released from liability or that under *Kinetics, Inc.* it could not be sued on a theory of respondeat superior.

We will not rule on a question that was not raised below. *Cisneros v. Molycorp, Inc.*, 107 N.M. 788, 794, 765 P.2d 761, 767 (Ct.App.1988); SCRA 1986, 12–216. By failing to raise the issue, as the trial court expressly allowed it to do, Albertsons failed to adequately preserve it. Despite the fact that Gutierrez' answer brief alerted this court to the fact that the issue was not preserved, Albertsons' reply brief did not cite us to any part of the record indicating where the issue was preserved. *See Batchelor v. Charley*, 74 N.M. 717, 720, 398 P.2d 49, 50 (1965) ("The burden is upon appellant to show that the question

presented for review was ruled upon by the trial court...."); *see also* SCRA 1986, 12–213(A)(3) (Cum.Supp.1991); –216(A).

## CONCLUSION.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

DONNELLY, J., concurs.

BIVINS, J., dissents.

BIVINS, Judge (dissenting).

Where a jury has found negligence, the reviewing court must consider the evidence in a light most favorable to support the verdict, and should not reverse unless convinced that there was neither evidence nor inferences therefrom which will support the verdict. *Lewis v. Barber's Super Mkts., Inc.*, 72 N.M. 402, 403–04, 384 P.2d 470, 471 (1963); *see also Barakos v. Sponduris*, 64 N.M. 125, 127, 325 P.2d 712, 713 (1958). My review convinces me that reversal is mandated.

## A. FACTUAL BACKGROUND

With that standard in mind, I will set forth the relevant facts. On Friday, May 25, 1984, Plaintiff fell while shopping with a friend in Defendant's store. The friend did not testify. Plaintiff was five and one-half months pregnant at the time. While proceeding toward the front of the store with her friend behind her pushing a cart, Plaintiff attempted to reach for some soup. Plaintiff could not recall anything from the time she reached for the soup until she fell. "I remember I went to reach for some soups and the next thing I knew I was on the floor. That is all I can remember." Plaintiff did not feel anything that indicated the presence of water until *after* she fell. It was when someone started to mop up the water that she felt moisture on her back. Plaintiff said she had no idea what caused her to fall.

Witnesses who responded gave clearer testimony as to the nature, size, location, and source of the spillage. Ms. Turner, a nurse, who at the time was proceeding toward the front of the store on aisle four,

did not see Plaintiff fall but "heard a thud as if someone was falling." She saw Plaintiff, to the rear of the aisle, on the floor on her back. Turner saw a clear liquid puddle next to Plaintiff, approximately six inches in width by two and one-half to three feet in length, which she assumed to be water. "She was right by the puddle lying on the floor on her back." Plaintiff was "pretty much in the middle" of the aisle and the water was closer to the side of the aisle. Turner did not know the source of the water. She saw no streaks through the water and saw no footprints in the puddle.

Mr. Moulton, the store director, was the second to arrive. He observed the liquid on the floor. When asked about the source of liquid, he said he had no idea how the liquid or the water got on the floor. Moulton did investigate a lobster tank six to eight feet away at the end of the aisle, but stated that there was no trail of water leading from the tank to the spot where Plaintiff had fallen and there was no leak in the tank. Moulton described seeing one or two puddles, each "maybe six inches in diameter or so." He also recalled that the water was adjacent to where Plaintiff was lying on her back. Moulton saw no foot marks but did remember "a couple of cart tracks."

Mr. Kell, the store manager, observed the liquid. He described it as less than four ounces covering an area of one foot by three feet. He said the liquid was not in a solid body but made up of several spots. He tasted the liquid and determined it was water. He also checked the lobster tank and found no leakage. The purpose of tasting the liquid was to determine if it contained salt which is used in the tank. It did not. Kell took a sample of the spillage. He too could not find a source for the spilled water.

## B. DISCUSSION

### 1. *Failure of Proof of Reason for Plaintiff's Fall*

The first obstacle in finding substantial evidence to support Defendant's negligence is that Plaintiff offered no evidence as to how she fell or what caused her to fall.

*See Caldwell v. Johnsen,* 63 N.M. 179, 184, 315 P.2d 524, 527–28 (1957) (directed verdict upheld where plaintiff unable to explain what caused her to fall). Plaintiff did not describe slipping or sliding on the surface of the floor or on the water itself. She did not say she lost her balance or footing. Plaintiff was asked the following question and gave the following answer:

Q. Would it be fair to say you don't recall anything from the time you actually reached for the soup until you fell?

A. That's right, I don't recall. I don't remember nothing.

The only evidence remotely tying the puddle of water to Plaintiff's fall, other than the presence of the water near her after she fell, was the testimony of Turner who, when asked if she saw anything that might have caused the fall, said "there was water on the floor." This amounts to no more than speculation. Turner did not see Plaintiff fall and did not claim to know how she fell. Moreover, a reasonable inference could not be drawn from that testimony since Turner said that the puddle showed no marks of having tracks or footprints through it. Further, at the time Turner arrived to aid Plaintiff, Plaintiff was to the side of the puddle, not in it. *See Barakos,* 64 N.M. at 129, 325 P.2d at 714–15 (testimony may be disregarded where legitimate inferences may be drawn that cast reasonable doubt upon the truth or accuracy of the oral testimony); *Bowman v. Incorporated County of Los Alamos,* 102 N.M. 660, 662, 699 P.2d 133, 135 (Ct.App.1985) (an inference "is more than a supposition or conjecture" (citing *Lovato v. Plateau, Inc.,* 79 N.M. 428, 430, 444 P.2d 613, 615 (Ct.App.1968)). Plaintiff's counsel's representation that Turner saw "Plaintiff ... lying on her back in water after the fall" is not supported by the record.

Although not involving a slip and fall accident, *Lovato* is instructive. In that case, plaintiffs, who had just filled the tank on their pickup, heard an explosion underneath and saw a flash. *Id.* at 430, 444 P.2d at 615. It was unknown what was burning, how the flammable substance got on

the paved apron, how long the substance had been there, or what caused the ignition. There was no evidence as to any notice to or knowledge on the part of anyone that any gasoline or other flammable substance had been spilled or otherwise caused to be present. The supreme court said that all reasonable inferences from the evidence must be indulged in support of the plaintiffs' case, but that "an inference is more than a supposition or conjecture. It is a logical deduction from facts which are proven and guess work is not a substitute therefor." *Id.* The supreme court affirmed a directed verdict for defendant in that case for failure of proof. I would do so here for the same reason. *See also Bowman,* 102 N.M. at 662–63, 699 P.2d at 135–36; *cf. Rayco Drilling Co. v. Dia–Log Co.,* 81 N.M. 101, 107, 464 P.2d 17, 23 (1970) (equal probabilities will not support recovery). To do otherwise would require stacking inference upon inference. This is impermissible. *Hansler v. Bass,* 106 N.M. 382, 386, 743 P.2d 1031, 1035 (Ct.App.), *cert. denied,* 106 N.M. 375, 743 P.2d 634 (1987); *Duran v. General Motors Corp.,* 101 N.M. 742, 753, 688 P.2d 779, 790 (Ct. App.1983), *cert. quashed,* 101 N.M. 555, 685 P.2d 963 (1984).

### 2. *Failure of Proof of Defendant's Negligence*

In addition to the failure of proof linking Plaintiff's fall to the water, there was a failure of proof as to negligence by Defendant. In an analogous case, this court, relying on *Lovato,* concluded that no inference of negligence could be drawn by the unexpected presence of foreign matter on the floor. *See Williamson v. Piggly Wiggly Shop Rite Foods, Inc.,* 80 N.M. 591, 593, 458 P.2d 843, 845 (Ct.App.1969). In *Williamson,* the floor had been swept and mopped an hour before the fall, and the produce manager had inspected the area several times during that interim and saw nothing. *Id.*

In the case before us, it is undisputed that one of the courtesy clerks dry-mopped the entire store, including aisle four, starting at 4:00 p.m., and had completed the cleaning before the accident, which oc-

curred at approximately 5:00 p.m. Moulton had seen the clerk, Lujan, make his turn in aisle four. It was estimated that Lujan had cleaned aisle four ten to twenty minutes before the accident. Lujan testified that he saw no water when he mopped that aisle. Lujan described how the dry mop grips the floor when it comes into contact with water. That did not occur.

The law governing slip and fall cases is well-established. To find a shopkeeper negligent toward business invitees, the evidence must show a dangerous condition that either is known or should have been known; that the condition is such that the shopkeeper realizes that his invitees would not discover the danger themselves; and with such knowledge the shopkeeper fails to exercise reasonable care to protect his invitees. *O'Neil v. Furr's, Inc.,* 82 N.M. 793, 795, 487 P.2d 495, 497 (Ct.App.1971). A business is not an insurer of the safety of its customers, *De Baca v. Kahn,* 49 N.M. 225, 230, 161 P.2d 630, 633 (1945), and the mere presence of a slippery spot does not establish negligence since this condition may arise temporarily in any business. *Kitts v. Shop Rite Foods, Inc.,* 64 N.M. 24, 27–28, 323 P.2d 282, 284 (1958).

Here, we have evidence of a wet spot on the floor without any proof of its source. The evidence shows that the floor had been mopped ten to twenty minutes before Plaintiff fell. No one reported any spillage and none was observed either by the clerk when he cleaned the area or by any other store employee. The only logical inference is that the water was spilled between the time the clerk cleaned aisle four and the time Plaintiff fell. This length of time is insufficient to hold Defendant negligent given the condition of the puddle when Plaintiff fell.

We said in *Williamson* that the mere presence of a slick or slippery spot does not of itself establish negligence because this condition may arise temporarily. Negligence may not be presumed from the mere fact that an injury has been sustained. *Williamson,* 80 N.M. at 592, 458 P.2d at 844; *see also Waterman v. Ciesielski,* 87 N.M. 25, 27, 528 P.2d 884, 886 (1974) (unex-

plained accident is not enough to infer negligence); *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 495, 745 P.2d 717, 720 (Ct.App. 1987). To impose liability here would require that we make Defendant an insurer of the safety of its customers. Defendant is not held to that standard. *De Baca*, 49 N.M. at 230, 161 P.2d at 633.

In reviewing for the existence of substantial evidence to support the verdict, it should be noted that Plaintiff called as her witnesses, Moulton, Marcus Lujan, and one other store employee, Adrian Gallegos. This point is made because evidence regarding the sweeping of the store, including aisle four, came in through Plaintiff's proof. With that in mind, I will now comment on the evidence the majority relies on to support the verdict.

#### a. Lujan's Actions and Subsequent Testimony

As to actual knowledge of the existence of the water in time to remove it, the majority first looks to Lujan's presence in the mop closet after he completed sweeping the floors. While the majority emphasizes variances in Lujan's testimony as to why he was getting the wet mop, those differences do not permit the jury to infer a different purpose. The jury could disbelieve Lujan's testimony and statement that he intended to clean dirty areas or the produce department, however, the jury would not be justified in finding the opposite was true, i.e., that Lujan was actually getting the mop to go back and clean the spilled water in aisle four that he knew he had missed. *See De Baca*, 49 N.M. at 231, 161 P.2d at 633 (even if jury disregards testimony, it is not justified in finding the opposite is true).

The majority's attempt to get around this rule also fails. The jury could not reasonably infer that because Lujan was in the mop closet after finishing his sweeping, he must have had actual knowledge of the water when he swept aisle four ten to twenty minutes earlier. That is not a permissible inference.

In *Stambaugh v. Hayes*, 44 N.M. 443, 103 P.2d 640 (1940), the supreme court faced a similar argument. Plaintiff in that case attempted to prove an employer liable under the doctrine of respondeat superior for the negligence of one of its employees. The accident occurred when the employee was en route to a friend's house. The employee, an insurance agent, was required to put in long days, collecting in his debit area until all accounts had been collected, then spend the remainder of the week selling new insurance. *Id.* at 449, 103 P.2d at 644. The employee was approaching his debit area at 6:30 p.m., when he collided with and killed plaintiff's decedent, a ten year old boy. The employee testified that he worked in his debit area until 6:00 p.m., then went to his fiancee's house. He decided to quit for the day and left her house after being there fifteen minutes and headed for Old Town to visit a family friend, where he had a standing invitation. *Id.* at 450, 103 P.2d at 644. Plaintiff argued that since the employee was approaching his debit area, the jury could infer he was still working or intended to sell new insurance to his friend. The supreme court, according the jury's verdict the same deference as we do here, reversed the judgment against the employer. The court held that even disregarding the employee's testimony, there was not the slightest evidence upon which to base even conjecture regarding employee's destination or mission at the time of the accident. The court held there were no facts from which to draw a logical deduction, only conjecture and probabilities. *Id.* at 451, 103 P.2d at 645; *see also Gonzales v. Shoprite Foods, Inc.*, 69 N.M. 95, 98–99, 364 P.2d 352, 354 (1961) ("An inference is not a supposition or conjecture, but a logical deduction from facts proved, and guesswork is no substitute therefor.").

The *Stambaugh* court defined a reasonable inference "as a process of reasoning whereby, from facts admitted or established by the evidence, or from common knowledge or experience, a reasonable conclusion may be drawn that a further fact is established." *Stambaugh*, 44 N.M. at 451, 103 P.2d at 645. The court also stated that "[w]here evidence is equally consistent

with two hypotheses, it tends to prove neither." *Id.*

It was equally consistent that Lujan was obtaining the mop to clean the dirty areas. Moulton testified that was the procedure. To infer Lujan was going back to aisle four would require the jury to infer that was his destination and from that inference further infer he was going there to clean the puddle of water, the existence of which he had knowledge. This stacking of inferences on inferences is impermissible. *Id.*

The inference the majority says may be drawn from Lujan's presence in the mop closet is even more improbable when viewed in light of other evidence Plaintiff offered. She proved through Moulton and Lujan that Lujan did sweep the store; that he used a three-foot wide dry mop; that he would go up each aisle at least twice; that the width of the dry mop covered all but a foot or less of the aisle when run over twice; that the mop would drag when it came into contact with water and the water would streak; and that Moulton observed Lujan making his turn at the front of aisle four where Moulton was working at a check-out counter.

### b. Plaintiff's Constructive Knowledge Argument

Nor can a permissible inference be drawn from the fact someone mopped up the water while Plaintiff was still lying on the floor, referred to by Plaintiff as the "guilty conscience" evidence. It may have been insensitive to ask Plaintiff to move so someone could mop around her, but removing the water proves nothing, even if the

jury could infer it was Lujan who did it. Moulton testified he may have told Lujan to bring a mop. The same type of conjecture, piling inferences on inferences is required here as with the mop closet evidence. It is just as logical, perhaps more so, to infer that the water was removed to prevent others from falling. Moulton had called for paramedics and there was testimony that the store had between 2,000 to 3,000 customers a day.

To uphold a finding of constructive knowledge of the water, the majority relies on evidence that the store was busy and that about one-half of the courtesy clerks had quit or been laid off the prior week. In addition to the fact that Moulton testified he believed most of the positions had been filled, there is no evidence that Lujan was rushed or pressured to hurry up with his mopping chores. Had there been any evidence suggesting the presence of the water when Lujan swept aisle four, Plaintiff's efforts to show the layoff and busy condition might have some worth. As presented, it offered no more than conjecture. There simply was no evidence showing the store was short-handed or that its procedures caused the accident.

The last item of evidence relied on to establish constructive knowledge is Moulton's testimony that while he saw no footprints, he remembered a couple of cart marks. He arrived after Turner who saw neither. The majority also relies on testimony by Lujan to the same effect, but a fair reading of his testimony reflects that he was referring to the condition after Plaintiff had been removed by a stretcher with wheels on it, not before.[1] Be that as

---

1. The following exchange took place between Plaintiff's counsel and Lujan on direct examination:

> Q. How much water was there?
> A. It was like streaked. I mean, there was carts, had already went over. *After she was gone you mean?*
> Q. *No, when she was*—well, was there water underneath her?
> A. I don't remember.

(emphasis added). When Lujan related his answer to "after she was gone you mean?", counsel said "No," but then changed the subject. Lujan was not afforded the opportunity to describe the condition he observed before Plaintiff left. Mo-

ments later, Lujan was given that opportunity. On cross-examination to complete his answer, the following exchange occurred:

> Q. The streaks that you saw that were through the water, were those there before or after Mrs. Gutierrez was taken by the paramedics?
> A. It was after.
> Q. Do you know if she was taken on a stretcher that had wheels on the bottom of it?
> A. I think so.

Further, the majority does not account for the fact that Lujan arrived at the scene after others, and we do not know how much time expired from the time Moulton responded, saw Plaintiff

it may, Moulton did remember a couple of cart marks through the water.

Case law requires that the foreign matter have been on the floor for a sufficient length of time that the store should have seen it. *See generally* 65 C.J.S. *Negligence* § 63(124) (1966) (storeowner liable only if had constructive or actual notice of presence of substance and substance was on floor long enough that storeowner had reasonable opportunity to remove it). The period, of course, is for the jury to determine, but it must be for an unreasonable length of time. New Mexico case law holds the mere presence of a slippery spot does not prove negligence since this condition may arise temporarily in any business. *Kitts*, 64 N.M. at 27–28, 323 P.2d at 284. The *Restatement (Second) of Torts* § 328D cmt. g (1965) (citations omitted) provides a useful example:

A, a customer in B's store, slips on a banana peel near the door, and falls and is injured. The banana peel is fresh, and there is no evidence as to how long it has been on the floor. Since it is at least equally probable that it was dropped by a third person so short a time before that B had no reasonable opportunity to discover and remove it, it cannot be inferred that its presence was due to the negligence of B.

Does a couple of cart marks permit an inference that the water had been there a sufficient length of time to require the store to observe it? Appellate courts have not directly addressed this question. If a grape or banana falls on the floor and is stepped on by one customer, is that sufficient to raise an inference that the store should become aware of it before a second customer steps on the item? To say it is would require the store to maintain patrols and constantly keep surveillance over the customers. I do not believe New Mexico law goes that far.

Because New Mexico case law is clear, the majority understandably has looked for out-of-state authority to support affirmance. I do not believe that authority helps. In *Foodtown Stores, Inc. v. Patterson*, 282 Ala. 477, 213 So.2d 211, 216 (1968), the Supreme Court of Alabama relied on the fact that six or seven customers were at the produce counter, coupled with the fact that produce does sometime fall on the floor, to conclude an inference could be drawn that the store should have known the beans might fall when it had been ten minutes since the clerk had swept the floor. Alabama apparently requires the stores to anticipate happenings, such as beans falling, and be available to sweep every few minutes. New Mexico does not. As stated in *Williamson*, 80 N.M. at 592, 458 P.2d at 844, "the law does not impose upon a storekeeper the duty to follow each customer about, dustpan in hand, to gather up debris...." (citations omitted). In fact, New Mexico case law makes clear the mere presence of foreign material on the floor does not give rise to an inference of neglect. *Kitts*, 64 N.M. at 27–28, 323 P.2d at 284. We apply a common sense approach that requires reasonable care, not constant surveillance. *See Barrans v. Hogan*, 62 N.M. 79, 83, 304 P.2d 880, 882 (1956) (evidence held insufficient to charge defendant with knowledge of dangerous condition on floor).

Nor does *Keene v. Arlan's Department Store*, 35 Md.App. 250, 370 A.2d 124, 126–29 (1977), require affirmance. In that case, the clerk's utterance coupled with her close proximity to the "clear, sleek solution," and the plaintiff's husband's presence in the check-out line for fifteen minutes was sufficient to give rise to an inference that the store had knowledge of the spot for at least fifteen minutes. We have no comparable situation in the case before us.

Here, the proof was uncontradicted that when Plaintiff fell the puddle was clear, not streaked, and with the exception of Moulton's recollection of a couple of cart marks, was undisturbed. Utilizing the definition on the drawing of inferences, as set

---

on the floor, left to call paramedics and to call for assistance on the intercom to which Lujan responded. Plaintiff would have had to show the condition did not change during that time.

Plaintiff did not do so because she did not rely on this evidence to establish notice or knowledge.

forth in *Stambaugh,* the only logical inference is that a customer ahead of Plaintiff ran over the puddle. 44 N.M. at 451, 103 P.2d at 645. Turner, who preceded Plaintiff, was going the same direction. It could have been Turner, or someone else, if Turner was pushing her cart on the wrong side of the aisle. With 2,000 to 3,000 customers a day, on a busy Friday, at 5:00 p.m., it is not reasonable to conclude that the water could have remained in near perfect condition for the ten to twenty minutes since Lujan swept that aisle. We know from experience shoppers often travel up and down each aisle. The only logical inference is that the puddle came into existence just prior to Plaintiff reaching that area.

The court today has not only impliedly overruled forty-six years of well-established law starting with *De Baca v. Kahn,* 49 N.M. 225, 161 P.2d 630 (1945), it has adopted a rule that where the condition of a foreign matter is relied on to prove constructive notice, the store must know of its existence after the first customer comes into contact with it no matter how short a period that may be. This approach will no doubt be a welcome surprise for Plaintiff. Perhaps recognizing the weakness of this argument, Plaintiff did not even rely on it in her brief and presumably not below. She made no more than a passing glance in her brief of the cart mark testimony of Moulton.

Nor does Plaintiff rely on the theory advanced in the majority that Lujan may not have even swept aisle four. While I disagree with the majority's interpretation of Lujan's taped interview six weeks after the incident, even if it could be read as the majority suggests,[2] the idea put forth is at odds with Plaintiff's theory and the uncontradicted proof she offered. She established through Moulton and Kell that Lujan did sweep the entire store and through Moulton he swept aisle four. That testimony was not impeached. Moreover, Plaintiff

never attempted to show Lujan failed to sweep, only that he missed the water when he did sweep. To say a jury question was raised as to whether Lujan "swept aisle four at all" not only changes Plaintiff's theory but ignores case law that unimpeached testimony must be accepted, particularly when offered by the prevailing party. *See Lahr v. Lahr,* 82 N.M. 223, 225, 478 P.2d 551, 553 (1970) (reversible error found where individual's unimpeached testimony was not accepted).

As stated at the outset, in reviewing a verdict the appellate court must consider the evidence in a light most favorable to support the verdict. We disregard unfavorable facts and inferences that could be drawn from those facts. Nevertheless, principles guide us in determining whether the verdict is supported by substantial evidence. We keep in mind that substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Sandoval v. Department of Employment Sec.,* 96 N.M. 717, 718, 634 P.2d 1269, 1270 (1981). In examining the evidence for substantiality, we should give it a reasonable and fair interpretation. We must not fragment the evidence unduly to find support for the verdict. *See State v. Manus,* 93 N.M. 95, 100, 597 P.2d 280, 285 (1979). Also, the inferences to be drawn from facts must be reasonable and logical; guesswork is no substitute. Once we have examined the evidence in support of the verdict, we then must ask whether a rational trier of fact could find for the prevailing party by the greater weight of the evidence. As applied to this case, could a rational trier of fact find that Defendant either knew of the presence of the water or that the water had been on the floor for such a length of time prior to Plaintiff's fall that Defendant should have been aware of its presence and then failed to remove it or warn of its existence? I would hold it could not. Plaintiff has only

2. The transcription of the taped telephone interview between Mr. Huebert and Lujan on July 9, 1984, read in context, indicates that the interviewer at the outset thought Lujan had swept only aisle four. This lack of communication resulted no doubt from Lujan's early answer

that he had swept aisle four ten minutes before the accident. In any event, I fail to see how the majority can make a leap from their interpretation to the conclusion that Lujan may not have swept aisle four at all.

shown that there was water on the floor and that maybe she fell on that water but proved none of the essential elements of negligence. The sufficiency of the evidence depends on the amount necessary to satisfy the burden of proof. *See State v. Davis,* 97 N.M. 130, 132, 637 P.2d 561, 563 (1981) (when no rational trier of fact could find guilt beyond a reasonable doubt, jury verdict can be overturned on appeal); *State ex rel. Dep't of Human Servs. v. Williams,* 108 N.M. 332, 335, 772 P.2d 366, 369 (Ct.App.), *cert. denied,* 108 N.M. 273, 771 P.2d 981 (1989). Here Plaintiff's burden was to prove negligence by the greater weight of the evidence; evenly balanced evidence is not sufficient. *See* SCRA 1986, 13–304 (instruction given to jury in this case). In my opinion, the evidence of negligence here was not evenly balanced; it did not exist. The majority holding otherwise, I respectfully dissent.