541 P.2d 430

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Joe Pat LUCERO and Susan Sena, Defendants-Appellants.**

**No. 10154.**

Supreme Court of New Mexico.

Oct. 9, 1975.

Roy G. Hill, Truth or Consequences, for defendants-appellants.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

OMAN, Justice.

Defendant Lucero was convicted of first degree murder and defendant Sena of harboring or aiding a felon, to wit, Lucero. Both have appealed. We affirm.

Lucero and Sena lived together. Sena, the decedent and decedent's wife were receiving treatments of methadone under a drug rehabilitation program operated by El Vicio Incorporated. On December 27, 1972, a meeting was called at El Vicio headquarters. Sena, decedent and dece-

dent's wife appeared at the headquarters for the meeting, which, for some reason, was aborted. Lucero accompanied Sena.

There are differences in the testimonies of witnesses as to what actually occurred leading up to the shooting of decedent and his wife by Lucero, but the wife testified to a brief exchange of words between her and Sena; a verbal charge by Lucero that decedent was a "rat" (meaning a police informer); the drawing of a gun by Lucero and shooting decedent twice; and the shooting of her in the back by Lucero as she sought to escape and go for help. The shootings were admitted by Lucero. He claimed he did so in defense of himself and Sena. However, Sena denied having seen a gun or having witnessed the shootings.

Some time later in the evening the police went to the home of another person in the immediate area of El Vicio headquarters looking for Lucero. There is evidence that one of the officers knew Lucero and as he approached the house from the rear he saw Lucero and Sena together in a doorway leading from the outside into a rear bedroom. As soon as they saw the officer, Sena began to close the door. The officer identified himself as an officer and ordered them to halt. Sena closed the door, and the officer immediately heard someone running inside the house. The door had not been fully closed, so the officer pushed it open and entered the bedroom. He noticed Sena running into another part of the house and cautiously pursued her.

Upon entering the living room at the front of the house, the officer found Sena, two or three other police officers who had entered from the front, and several other persons. Although this was not the residence of Sena, she so claimed and protested her removal from her home. Another officer later found Lucero crouched in a closet near the bedroom door in which the first officer had seen defendants and which, as above stated, had been closed

upon him by Sena after being ordered to halt.

Lucero first contends the evidence against him was insufficient to support his conviction of first degree murder, because "he did not have sufficient time to weigh his actions and consider their consequences." This court views the evidence on appeal in the light most favorable to the verdict, resolving all conflicts therein and indulging all permissible inferences therefrom. *State v. Romero*, 67 N.M. 82, 352 P.2d 781 (1960); *State v. Polsky*, 82 N.M. 393, 482 P.2d 257 (Ct.App.), cert. denied, 82 N.M. 377, 482 P.2d 241 (1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 688, 30 L.Ed. 2d 662 (1972); *State v. Favela*, 79 N.M. 490, 444 P.2d 1001 (Ct.App.1968); *State v. Manlove*, 79 N.M. 189, 441 P.2d 229 (Ct. App.), cert. denied, 79 N.M. 159, 441 P.2d 57 (1968).

Murder in the first degree is a willful, deliberate and premeditated killing. Section 40A–2–1, N.M.S.A., 1953 (2d Repl.Vol. 6, 1972). The precise issue raised is that of the time required to formulate a deliberate intention to kill. Although a deliberate intention means an intention or decision arrived at after careful thought and after a weighing of the reasons for the commission of the killing, such a decision may be reached in a short period of time. Here there is evidence clearly supporting a deliberate intention on the part of Lucero to kill decedent as well as decedent's wife. Although he was receiving no treatments at El Vicio, Lucero went there armed with a loaded pistol, which was concealed on his person; there was a suspected informer or informers among the group who patronized El Vicio; Sena, with whom Lucero lived, was a member of this group; Sena and decedent's wife, in the presence of Lucero, exchanged some unpleasant words; Lucero then charged decedent with being a "rat"; decedent asked Lucero why he was called a "rat"; and Lucero thereupon drew his gun and proceeded to shoot both decedent and his wife.

Under these circumstances, the issue of deliberation, as well as all other issues of fact, was for the jury to decide. *State v. Riggsbee*, 85 N.M. 668, 515 P.2d 964 (1973). The issue of deliberation and all other issues were resolved against defendant.

Lucero also questions the correctness of the district court's action in instructing the jury on first degree murder. However, his objection was that there was insufficient evidence to submit the question of first degree murder to the jury, and this was based upon his claim that there was insufficient evidence to support a finding of a deliberate intention on his part to kill decedent. We have already disposed of this contention.

■■ He also contends he was prejudiced because the district court failed to instruct the jury that implied malice was insufficient upon which to find him guilty of first degree murder. However, he raised no such objection at trial. The instructions defined murder in the first degree as a "willful, deliberate and premeditated killing" and instructed that "premeditated malice exists where the intention to take human life unlawfully is deliberately formed in the mind, and that determination is meditated upon before the fatal stroke is given." Express malice was defined as a "deliberate intention, unlawfully to take the life away of a fellow creature, which is manifested by external circumstances capable of proof."

Even if defendant had properly raised the question he now presents for the first time on appeal, and even if we agreed with his claim that the jury should have been instructed that implied malice was insufficient to sustain a conviction of first degree murder, we would still feel compelled to reject his contention. The instructions can be construed only as requiring express malice as an element of first degree murder, and the evidence clearly supports a finding of express malice.

■ Lucero next complains that the district court erred in admitting evidence as to the shooting of decedent's wife. He relies upon *State v. Aragon*, 82 N.M. 66, 475 P.2d 460 (Ct.App.1970); *State v. Lindsey*, 81 N.M. 173, 464 P.2d 903 (Ct.App.1969), cert. denied, 81 N.M. 140, 464 P.2d 559, cert. denied, 398 U.S. 904, 90 S.Ct. 1692, 26 L.Ed.2d 62 (1970), and *State v. Mason*, 79 N.M. 663, 448 P.2d 175 (Ct.App.), cert. denied, 79 N.M. 688, 448 P.2d 489 (1968). The opinions in those cases afford him no comfort under the facts and circumstances of this case.

The shooting of decedent's wife occurred within a second or so after the shooting of decedent and as she sought to escape. Shooting her under the circumstances here present obviously had real probative value upon the issues of deliberation and intent. Her shooting immediately following the shooting of her husband constituted evidence of a preconceived plan by Lucero to kill her as well as her husband.

■ Sena claims the evidence failed to support her conviction of harboring or aiding Lucero. In fact, she urges that there is a complete absence of evidence to support her conviction and relies upon our decisions in *State v. Salazar*, 78 N.M. 329, 431 P.2d 62 (1967); *State v. Armijo*, 35 N.M. 533, 2 P.2d 1075 (1931), and *State v. Garcia*, 19 N.M. 414, 143 P. 1012 (1914). Nothing said in our decisions in any of those cases supports her contention. It is true that in the Salazar and Armijo cases, and particularly in the Salazar case, we considered and applied the doctrine of fundamental error by which we are compelled to reverse a conviction if there is a total absence of evidence to support it as well as evidence of an exculpatory nature. Here we have substantial evidence to support Sena's conviction. The testimonies of her and Lucero, had they been believed by the jury, would have exculpated her, but the jury was not obliged to believe them.

The statute under which she was charged and convicted provides in pertinent part:

> "*Harboring or aiding a felon.* Harboring or aiding a felon consists of any person, not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister by consanguinity or affinity, who knowingly conceals any offender or gives such offender any other aid, knowing that he has committed a felony, with the intent that he escape or avoid arrest, trial, conviction or punishment."

Section 40A–22–4, N.M.S.A.1953 (2d Repl. Vol. 6, 1972).

The evidence unquestionably supports findings that Sena was present and witnessed the shootings by Lucero, even though she claimed to have seen no gun and observed no shootings; that she and Lucero were together at El Vicio headquarters after the shooting and later at the home near the headquarters where they were apprehended; that they were standing in or near the open doorway at the rear of this home when one of the police officers approached them, announced he was a police officer and ordered them to halt; that she closed, or at least undertook to close, the door upon the officer; and that she then immediately ran toward the front of the house while Lucero secreted himself in a closet near the door which she had at least partially closed upon the officer.

By viewing this evidence, and all inferences reasonably deducible therefrom, in the light most favorable to the verdict, we are convinced that Sena was guilty of aiding Lucero with the intent that he escape or avoid arrest. To aid means to assist, support or help. Webster's Third New International Dictionary, Unabridged (1961).

■ Sena next contends that § 40A–22–4, supra, violates article II, § 18 of the Constitution of New Mexico and the fourteenth amendment to the Constitution of the United States. Her claim is that the exemptions from the statute's application of certain named groups of persons on the basis of relationship to the felon constitute unreasonable classifications and deny her equal protection of the law. Her argument is that other relationships by consanguinity and affinity are just as close as those listed in the statute, and that she should be exempt because she was living with Lucero as a wife, even though they were not married.

We are of the opinion that the classifications are reasonable and do not violate the equal protection clauses of the New Mexico and United States Constitutions. See and compare *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *People's Constitutional Party v. Evans,* 83 N.M. 303, 491 P.2d 520 (1971); *Aragon v. Cox,* 75 N.M. 537, 407 P.2d 673 (1965), overruled on other grounds, 77 N.M. 79, 419 P.2d 456 (1966); *Padilla v. Health and Social Services Department,* 84 N.M. 140, 500 P.2d 425 (Ct.App.1972).

■ Both appellants contend that the district court abused its discretion in giving the following instruction to the jury:

> "It is your duty, as jurors, to consult with one another, and to deliberate with a·view of reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. However, you should not be influenced to vote in any way on any question submitted to you by the single fact that a majority of the jurors, or any of them, favor such a decision. In other words, you should not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinion of other jurors.

"I hope that after further deliberation you may be able to agree upon a verdict. That is why we try cases, to try to dispose of them and to reach a common conclusion, if you can do so, consistent with the conscience of the individual members of the jury. The court suggests that in deliberating you each recognize that you are not infallible, that you hear the opinion of the other jurors, and that you do it conscientiously with a view to reaching a common conclusion, if you can."

N.M.U.J.I. 16.2 (1966).

The jury began its deliberations at approximately 9:00 p. m. The court gave this additional instruction at approximately 12:40 a. m. the following morning. At approximately 1:00 a. m. the court recessed and the jury was sequestered for the night. The jury resumed its deliberations at 9:15 a. m., and the verdicts were returned into open court by the jury shortly after 10:30 a. m.

Appellants concede that the matter of giving this additional instruction rested within the sound discretion of the district court. *State v. Hatley*, 72 N.M. 377, 384 P.2d 252 (1963); *State v. Moore*, 42 N.M. 135, 76 P.2d 19 (1938); *State v. Manlove*, supra. However, they contend that the giving of the instruction, at the time it was given, constituted an abuse of discretion in that it unduly hastened the jury in its consideration of the case and coerced the jury into agreement.

As stated in *State v. Manlove*, supra, it is appropriate to give such an instruction only after the jury has deliberated for some time without reaching a verdict, and that it is improper by such an instruction to unduly hasten a jury in its consideration of the case or coerce the jury into an agreement. However, nothing has been presented to us which indicates that either of these results was even possibly attained or that the district court abused its discretion. The jury had been deliberating for over 3½ hours before the instruction was

given, and the verdicts were not returned until the jury had further deliberated as a body for approximately 1¼ hours the next morning.

The judgments should be affirmed.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.