637 P.2d 561

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Paul Lawrence DAVIS, Defendant-Appellant.**

**No. 13651.**

Supreme Court of New Mexico.

Dec. 11, 1981.

Martha A. Daly, Appellate Defender, Melanie S. Kenton, Asst. Appellate Defender, Santa Fe, Max Houston Proctor, Hobbs, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FEDERICI, Justice.

Defendant was convicted of first degree murder and sentenced to life imprisonment. The jury was instructed on first degree murder, second degree murder, voluntary manslaughter and self-defense. Defendant appeals to this Court seeking a new trial. He contends that (I) there was insufficient evidence to convict him of first degree murder, and that (II) the trial court erred in not admitting prior inconsistent statements of one of the State's witnesses. We affirm.

The murder occurred at approximately 9:00 p.m. on June 19, 1981 in Hobbs, New Mexico, during the celebration of the holiday known as Juneteenth. At that time, defendant, Curtis Moore and Eddie Joe Johnson were sitting in Washington Park in Hobbs when they were approached by the victim, Cunningham, who was looking for Arthur Stewart, a friend of the three. Defendant asked to buy marijuana from the victim. The victim refused, walked away and then returned to the group.

The testimony of various witnesses may be summarized as follows: Defendant did not testify on his own behalf at the trial but statements made by him to the police, in which he admitted shooting the victim but claimed self-defense, were admitted into evidence. According to these statements, when the victim returned to the group, he stated that Stewart had "ripped him off." At that point, defendant slapped the victim and slipped, the pistol he was holding went off, the victim came at defendant with a metal comb, and defendant shot him. Defendant stated he realized that the victim was only using a comb after he saw the comb lying next to him. Defendant claimed he never had prior difficulties with the victim.

Witness Moore's testimony corroborated the defendant's testimony, but added that the victim had swung at defendant twice with the metal comb and that the victim had called defendant names.

Witness Johnson's testimony is similar to the defendant's and Moore's.

Witness Slade testified that he saw defendant, Moore and Johnson sitting together talking to the victim. As he walked by the group, Slade asked the victim if he wanted a drink. The victim started towards Slade's car. Slade heard defendant call the victim and saw defendant walk halfway to meet the victim, who stated that he was not afraid of defendant. Defendant at that time said, "well, I'm gonna do you," and then shot into the air. Then after the first shot, Slade saw defendant "draw down" and shoot the victim.

Witness Robinson said he was riding his bicycle in the park, saw defendant and the victim having a discussion, saw defendant take off running, heard two shots and saw the victim fall.

Witnesses Willie Haynes and Chris Haynes are brothers. Both made state-

ments to the police at the time of the incident that they saw the victim running away from defendant and asking defendant not to shoot and that defendant fired twice. At the trial, the Haynes brothers denied they had seen defendant shoot the victim, explaining that they told police only what others told them.

Witness Detective McPeters testified that Wallace Robinson and Chris and Willie Haynes told him they had seen defendant shoot the victim.

Laboratory tests and evidence on the projectory of the bullet taken from the victim showed that the projectory was from back to front and from the left to the right side of the victim.

The clear substance of all the testimony and evidence is that defendant fired twice, once in the air and then once directly at the victim, striking the victim in the back while the victim was running away from the defendant and begging him not to shoot.

### I.

Defendant urges that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), and that a jury verdict can be overturned on appeal for insufficient evidence "when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). We agree with those statements.

Defendant then argues that the State has not met its burden of proof because it did not show that defendant had formed a "deliberate" intent to kill the victim. We disagree. Defendant asserts that such intent has been defined as a "decision arrived at after careful thought and after a weighing of the reasons for the commission of the killing," *State v. Lucero*, 88 N.M. 441, 443, 541 P.2d 430, 432 (1975), and that although such a decision can be reached in a

short period of time, there is no showing here that defendant had sufficient time in which to reach such a decision. *State v. Garcia*, 95 N.M. 260, 620 P.2d 1285 (1980).

The State agrees that the proper standard of review was stated in *Jackson v. Virginia, supra*. However, it also quotes the following from that Court:

But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial establishes guilt beyond a reasonable doubt. [Citation omitted.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation omitted.]

*Id.* at 318–319, 99 S.Ct. at 2789–2790.

In *State v. Garcia, supra*, this Court quoted from *State v. Lucero, supra*, stating:

Although a deliberate intention means an intention or decision arrived at after careful thought and after a weighing of the reasons for the commission of the killing, such a decision may be reached in a short period of time. Here there is evidence clearly supporting a deliberate intention on the part of Lucero to kill decedent as well as decedent's wife * * *.

Under these circumstances, the issue of deliberation, as well as all other issues of fact, was for the jury to decide. [Citation omitted.]

*Id.* 88 N.M. at 443–444, 541 P.2d at 432.

Under the circumstances, the issue of deliberation is one for the jury to determine. In this case, there is abundant evidence clearly supporting the jury's finding that defendant had a deliberate intention to kill the victim. *State v. Garcia, supra*.

### II.

Defendant next contends that witness Slade's prior statement should have been admitted into evidence in order to discount Slade's trial testimony, and that this prejudiced his defense. These inconsistencies were brought to the attention of the jury through the cross-examination of Slade and

through the testimony of Detective Johnson. The inconsistencies were also argued to the jury. The statement itself would have added nothing. Because each of the eyewitnesses made prior statements which were to some extent inconsistent with the trial testimony, admission of Slade's statement would have unduly emphasized his testimony and prior statement as compared with the testimony and prior statements of the other eyewitnesses to the shooting.

N.M.R.Evid. 403, N.M.S.A.1978 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

A written or oral statement of a witness as to material matters inconsistent with his trial testimony is admissible at trial for impeachment purposes. *State v. Carlton*, 82 N.M. 537, 484 P.2d 757 (Ct. App.), *cert. denied*, 82 N.M. 534, 484 P.2d 754 (1971). However, it is equally clear that such admission is limited by the necessary balancing of probativeness against prejudice. *State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct.App.1975). Furthermore, as was the case here, "evidence may be excluded if its probative value is substantially outweighed by * * * considerations of * * needless presentation of cumulative evidence." N.M.R.Evid. 403, *supra*.

The admission or exclusion of the inconsistent statement rests within the sound discretion of the trial court under the particular facts in this case and will not be reversed absent an abuse of that discretion. N.M.R.Evid. 403, *supra*. *See State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978). The trial court did not abuse its discretion in denying defendant's motion to introduce witness Slade's prior inconsistent statement.

The conviction and sentence of defendant are affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.