865 P.2d 1172

**STATE of New Mexico, Plaintiff–
Respondent,**

v.

**Juan TREVINO, Defendant–Petitioner.**

No. 19997.

Supreme Court of New Mexico.

Nov. 10, 1993.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-petitioner.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-respondent.

## OPINION

RANSOM, Chief Justice.

Juan Trevino appealed to the Court of Appeals from his convictions on four counts of criminal sexual contact of a minor in the third degree (CSCM) under NMSA 1978, Section 30–9–13(A) (Cum.Supp.1990), and two counts of contributing to the delinquency of a minor (CDM) under NMSA 1978, Section 30–6–3 (Repl.Pamp.1984). The Court of Appeals affirmed except as to one question certified for review by this Court pursuant to NMSA 1978, Section 34–5–14(C) (Repl.Pamp. 1990). *See State v. Trevino,* 113 N.M. 804, 806, 833 P.2d 1170, 1172 (Ct.App.1991). Trevino petitioned this Court for a writ of certiorari, requesting that we review issues not certified by the Court of Appeals. Although it was unnecessary because jurisdiction of the entire case was transferred to this Court by the certification, *see Collins ex rel. Collins v. Tabet,* 111 N.M. 391, 404 n. 10, 806 P.2d 40, 53 n. 10 (1991) (certification under Section 34–5–14(C) brings entire case under Supreme Court jurisdiction), we granted certiorari and consolidated this case with *State v. Orosco,* which is reported at 113 N.M. 780, 833 P.2d 1146 (1992). In *Orosco* this Court determined that Trevino's attack on his convictions for CDM as violating principles of double jeopardy required further consideration, and that portion of his appeal was severed. *See id.* at 781–82, 788, 833 P.2d at 1147–48, 1154. The parties submitted supplemental briefs, and the issues addressed therein are the basis for our opinion today. All other issues raised on appeal in this case

were affirmed in *Orosco.* *Id.* at 787, 833 P.2d at 1153.[1]

The State charged Trevino with CSCM offenses against two boys under Section 30–9–13(A), but because of different circumstances separate provisions of the statute applied. As will be discussed below, J.C. was fourteen and employed by Trevino; J.J. was twelve. With respect to J.C., Trevino was convicted of three counts of CSCM and one count of CDM. With respect to J.J., he was convicted of one count of CSCM and one count of CDM. The Court of Appeals held that "although both the crimes of [CSCM] and [CDM] were violated by the [same act of] unlawful and intentional touching of the minor's genitals, two offenses were committed." *Trevino*, 113 N.M. at 808, 833 P.2d at 1174. The Court of Appeals, applying the elements test set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and looking at the legislative intent underlying the two statutes, concluded that convictions under both statutes for the same conduct did not violate double jeopardy. We affirm the convictions and the holding of the Court of Appeals.

■ *Double Jeopardy.* Protection against multiple punishments for the same offense is one of three types of protection embodied in the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991).[2] In *Swafford*, this Court adopted a two-step process for double jeopardy analysis. *Id.* at 13, 810 P.2d at 1233. The first step is to determine "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes." *Id.* In this case, it is conceded that the same conduct formed the basis for convictions under both statutes.

Therefore, we turn to the second step of the analysis, a determination of "whether the legislature intended to create separately punishable offenses." *Id.* When it intends to do so, the legislature may impose multiple punishments for the same offense. Double jeopardy principles in cases involving multiple punishments (like this one) are intended only to prevent imposition of a greater sentence than the legislature intended. *Id.* at 7, 810 P.2d at 1227; *see also Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (explaining that legislatures define crimes and fix punishments and the double jeopardy guarantee is a restraint on courts and prosecutors). If this Court were to find that it was not the legislature's intention to impose separate sentences for CSCM and CDM when the same conduct constituted both offenses, Trevino's convictions for CDM would have to be reversed.

We begin the second step of our double jeopardy analysis by looking to see if the legislature clearly expressed an intention to provide multiple punishment. We find no clear expression of such an intent and continue our analysis.

■ *—The two crimes each require proof of a fact that the other does not.* As we indicated in *Swafford*, the *Blockburger* test is a means of divining legislative intent by comparing the two statutes to see if each requires proof of a fact that the other does not. 112 N.M. at 8, 810 P.2d at 1228. In applying the *Blockburger* test, the evidence and proof offered at trial are immaterial; only the elements of the statutes are considered. *Id.* If one statute subsumes the other, i.e., if each offense does not require proof of a fact in addition to the facts required to prove the other, double jeopardy precludes multiple punishments. *Id.* at 14, 810 P.2d at 1234.

---

**1.** In his supplemental brief, Trevino also argues, summarily, that the uniform jury instruction for CDM is "wrong and requires reversal." This is not an issue mentioned in this Court's order requesting supplemental briefs, and we do not address it in this opinion. We do discuss the issue in another case we decide today, *see Henderson v. State*, 116 N.M. 537, 865 P.2d 1181 (1993), and our resolution of the issue in that case would not change the result here.

**2.** There is a double jeopardy provision in the New Mexico Constitution as well, *see* N.M. Const. art. II, § 15, but Trevino does not raise it. In any event, this Court has held that the state provision and the federal provision are so similarly worded that they should be subject to the same construction and interpretation. *See State v. Rogers*, 90 N.M. 604, 605–06, 566 P.2d 1142, 1143–44 (1977).

*—CSCM requires proof of a fact not required to prove CDM.* The elements of CSCM differ for the two victims in this case, so we must examine the two versions separately. Under Section 30–9–13(A)(1), the elements are: (1) an unlawful and (2) intentional (3) touching or applying of force to the intimate sexual parts of the victim, or causing the victim to touch the intimate sexual parts of the defendant (4) when the victim is a minor less than thirteen years old. Under Section 30–6–3, the elements of CDM are: (1) commission of an act or omission of the performance of a duty (2) that causes or tends to cause or encourage (3) the delinquency (4) of any person under the age of eighteen. Under our uniform jury instructions, the jury in this case was instructed under CDM that they also must find that Trevino's acts were intentional. *See* SCRA 1986, 14–141 (general criminal intent instruction—given except when crime requires specific intent or has no intent requirement). CSCM of a minor under the age of thirteen requires proof of a fact that CDM does not—an unlawful sexual touching.

The elements of Section 30–9–13(A)(2) are the same as Section 30–9–13(A)(1), except the age of the victim must be between thirteen and eighteen, and the perpetrator must be a person in a position of authority over the child and use that authority to coerce the child to submit. CSCM of a minor between the ages of thirteen and eighteen requires proof of an unlawful sexual touching and adds the element of coercion, neither of which is needed to prove CDM.

*—CDM requires proof of a fact not required to prove CSCM.* CDM requires proof that the act of the defendant contributed to the "delinquency" of a minor.[3] We always have relied on juries to determine what acts constitute contributing to delinquency in a particular case. "The common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." *State v. McKinley,* 53 N.M. 106, 111, 202 P.2d 964, 967 (1949) (quoting *State v. Millard,* 18 Vt. 574, 577 (1846)).[4]

The appellate courts of this state consistently have upheld findings that an unlawful sexual touching (or penetration) supported a conviction for CDM. *See State v. Favela,* 91 N.M. 476, 478, 576 P.2d 282, 284 (1978) (upholding conviction for CDM when adult female had consensual intercourse with fifteen-year-old boy), *overruled on other grounds by State v. Pitts,* 103 N.M. 778, 780, 714 P.2d 582, 584 (1986) (holding defendant need not be adult to commit CDM); *McKinley,* 53

---

3. This Court is divided three to two on the question of whether the evidence established that Trevino contributed to either boy's delinquency. In support of its view that proof of delinquency is absent, the dissenting justices quote language from the majority opinion's double jeopardy section even though the Court is unanimous in its belief that double jeopardy principles have not been violated in this case. The division of the Court lies not in the discussion of double jeopardy principles but in the majority opinion's holding in its last section that Trevino's acts need not be proved to have *actually* caused or encouraged delinquency in either of the boys if his acts *tended* to cause or encourage delinquency. The double jeopardy principles turn on the language of the criminal statutes, while proof of any given element turns on the evidence. The double jeopardy section refers to delinquency without distinguishing between the disjunctive requirements that the defendant's acts *either* cause *or* tend to cause or encourage delinquency. The dissent poses the question of what evidence was adduced to prove a fact different from the fact that defen-

dant committed an unlawful sexual touching, with or without coercion. The majority answers that the same evidence that proved touching also proved encouragement of delinquency.

4. Courts in other states have reached similar conclusions. *See, e.g., State v. Sullivan,* 11 Conn. App. 80, 525 A.2d 1353, 1361 (1987) (holding jury must determine if minor's morals were impaired using "their own knowledge, experience and common sense as adults"); *State v. R.J. (In re R.J.),* 224 Neb. 842, 401 N.W.2d 691, 693 (1987) (injuries to minor victim's principles and habits regarding right or wrong determined by jury's "[c]ommon sense, as well as the sense of decency, propriety, and the morality which most people entertain"); *Commonwealth v. Todd,* 348 Pa.Super. 453, 502 A.2d 631, 635–36 n. 2 (1985) (jury determines whether defendant corrupted minor using " 'common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain' " (citation omitted)).

N.M. at 110–11, 202 P.2d at 967 (holding man's act of having sex with fourteen-year-old girl could constitute CDM); *State v. Corbin*, 111 N.M. 707, 711, 809 P.2d 57, 61 (Ct.App.) (evidence that defendant attempted to touch minor sexually, showed him a Playboy magazine, encouraged him to "get it hard," and told him to unbutton his pants was sufficient to support conviction for CDM), *cert. denied*, 111 N.M. 720, 809 P.2d 634 (1991); *State v. Leyba*, 80 N.M. 190, 192, 453 P.2d 211, 213 (Ct.App.) (upholding CDM conviction for touching the private parts of and talking indecently to a minor), *cert. denied*, 80 N.M. 198, 453 P.2d 219 (1969). The defendant in *State v. Dodson*, 67 N.M. 146, 353 P.2d 364 (1960), was charged with CDM for engaging in "certain illicit sex practices" with a minor. She moved to dismiss the indictment on the grounds there was insufficient evidence to substantiate the charge. The trial court denied the motion and this Court affirmed, stating in dicta that: "We can conceive of few acts which would more manifestly tend to cause delinquency than those charged here...." *Id.* at 149, 353 P.2d at 367.

The fact that we have upheld jury findings that sexual conduct with a minor contributed to delinquency does not mean that juries always *must* find that such conduct contributes to delinquency. While unlawful sexual touching of a minor factually may evince a tendency to cause or encourage delinquency, even manifestly so in particular circumstances, it does not do so as a matter of law. In a given case, the evidence may belie a finding, beyond a reasonable doubt, that the sexual contact tended to cause or encourage delinquency. Such a case may involve contact with a sleeping child. Contributing to delinquency, therefore, is a fact separate from an unlawful sexual touching, and thus CDM is not subsumed within CSCM. Application of the *Blockburger* test shows that neither of the offenses subsumes the other, raising a rebuttable presumption that the legislature intended separate punishments. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

**■** —*Other indicia of legislative intent.* Having established a presumption that the legislature intended separate punishments for the two offenses, we continue our inquiry by reviewing other indications of legislative intent. *See id.* We look first to the purposes of the two statutes because if they are "directed toward protecting different social norms and achieving different policies [they] can be viewed as separate and amenable to multiple punishments." *Id.* We are mindful that "social evils can be elusive and subject to diverse interpretation." *Id.* There is also a danger, as Trevino points out, that a court could interpret the simple fact that the legislature passed two statutes as an indication that different purposes are addressed.

The purpose of the CSCM statute is clear—to protect the bodily integrity and personal safety of minors, whether awake or asleep. *See State v. Williams*, 105 N.M. 214, 217, 730 P.2d 1196, 1199 (Ct.App.) (holding criminal sexual penetration and criminal sexual conduct statutes protect interests of bodily integrity and personal safety of individuals), *cert. denied*, 105 N.M. 111, 729 P.2d 1365 (1986). The purpose of the CDM statute is a bit more broad. *See State v. Pitts*, 103 N.M. 778, 780, 714 P.2d 582, 584 (1986) (stating intent of legislature in enacting CDM statute was to protect children, who may be led astray in innumerable ways); *State v. Cuevas*, 94 N.M. 792, 794, 617 P.2d 1307, 1309 (1980) (holding purpose of CDM statute is to protect children from harmful adult conduct), *overruled on other grounds by Pitts*, 103 N.M. at 780, 714 P.2d at 584 (holding that perpetrator of CDM need not be an adult); *McKinley*, 53 N.M. at 111, 202 P.2d at 967 (holding purpose of juvenile law is to protect youths from persons who would lead them astray); *Leyba*, 80 N.M. at 192, 453 P.2d at 213 (holding acts are sufficient to constitute CDM if they tend to cause or encourage the minor to act in a manner injurious to the minor's morals). The CDM statute is intended to protect minors from "delinquency". Whatever the community sense of decency and morality determines delinquency to be under the CDM statute, it is addressed more to the mental and behavioral aspects of children than to their physi-

cal well-being. We find that the two statutes protect different interests, even though both interests may be violated by the same conduct.

We also have looked to the quantum of punishment established by the legislature for each of the crimes. All of Trevino's CSCM convictions were under Section 30–9–13(A), making them third-degree felonies. CDM is a fourth-degree felony. *See* Section 30–6–3. If the statutes were to share "many" elements, the greater penalty for CSCM could indicate a legislative intent not to punish the two offenses separately. *Swafford*, 112 N.M. at 15, 810 P.2d at 1235. Nonetheless, we conclude that the only common element between the statutes is the involvement of a minor as the victim of either physical or moral insult.

By application of *Swafford*, we conclude today that the legislature intended for the crimes of CSCM and CDM to be separate crimes, punishable separately even when unitary conduct violates both statutes. *Accord Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246, 251–52 (1982) (holding convictions under Pennsylvania laws for both rape and "corruption of a minor" did not violate double jeopardy even though both convictions were supported by the same act of sexual intercourse); *People v. Bobb*, 207 Cal.App.3d 88, 254 Cal.Rptr. 707, 713 (1989) (noting that California's CDM statute is no longer a necessarily included offense of "unlawful sexual intercourse"), *review denied, disagreed with on other grounds by People v. Eilers*, 231 Cal.App.3d 288, 282 Cal.Rptr. 252 (1991) *and People v. Barton*, 18 Cal.App.4th 119, 15 Cal.Rptr.2d 649, *review granted*, 17 Cal. Rptr.2d 814, 847 P.2d 1030 (1993). Therefore, we reject Trevino's claim that his convictions under both statutes violated double jeopardy principles.

*The State is not required to present separate evidence that the defendant's act contributed to the delinquency of a minor.* Trevino contends that if commission of CSCM is not *ipso facto* proof of CDM, then a conviction for CDM must be supported by proof in addition to proof of the defendant's act. In other words, if contributing to a minor's delinquency is a separate fact, the State should be required to present additional evidence in support of that fact. This essentially is an attack on the sufficiency of the evidence in this case because the State did not present any separate evidence (such as expert testimony) that Trevino's acts of sexual contact caused or tended to cause or encourage delinquency on the part of either of the two minors involved. *Cf. State v. R.J. (In re R.J.)*, 224 Neb. 842, 401 N.W.2d 691, 693 (1987) (father testified as to child's behavior). Instead, the State relied on the "common sense and the pooled knowledge" of the jury to the effect that sexual abuse and exploitation of minors have many serious consequences to their future well-being.

■ Although we have held that CDM requires proof of a fact that is not required to prove CSCM, that does not mean that the different facts cannot be proved by the same evidence. In none of the above-cited New Mexico cases is any reference made to any evidence beyond proof of sexual conduct with a minor. This comports with the rule that this is a jury decision and the jury is to use the common sense and the sense of decency, propriety, and morality that most people entertain. *McKinley*, 53 N.M. at 111, 202 P.2d at 967. While it may be helpful for the jury to hear evidence on whether a particular act tends to cause or encourage delinquent behavior either generally or with respect to the particular victim, such evidence is not required in the jury's exercise of common sense. If the jury finds that the defendant's conduct violated the community sense of decency, propriety, and morality, the jury may infer an adverse impact on the minor that tends to cause or encourage delinquency.

■ *The defendant's act need not actually cause delinquency.* Finally, Trevino argues that a conviction for CDM must be supported by evidence of actual delinquency because possible delinquency in the future is speculative. This point is without merit. The plain language of Section 30–6–3 prohib-

its acts that cause or tend to cause or encourage delinquency. The defendant is punished for his own acts, not those of the juvenile. The jury can convict for CDM if the defendant's act actually caused or encouraged the particular minor to commit a delinquent act or if the act only tends to cause or encourage delinquency generally. The "tends to cause or encourage" language refers to an objective view of defendant's conduct. The jury does not speculate; it convicts or acquits based on an actual act by or omission of the defendant. *See Favela,* 91 N.M. at 477–78, 576 P.2d at 283–84 (if CDM applied only when child actually committed a crime, adult could be charged as a principle or accessory and CDM would not be needed); *Leyba,* 80 N.M. at 192, 453 P.2d at 213 (CDM does not depend on the end result, but on the defendant's acts).

*Conclusion.* We hold today that convictions on charges of both CSCM and CDM based on unitary conduct do not violate principles of double jeopardy, that the State is not required to present evidence beyond the defendant's act to support a conviction for CDM, and that the act of the defendant need not actually cause delinquency. As a result of our holding today and resolution of the other issues raised on appeal by Trevino in *Orosco,* we affirm his convictions.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.

MONTGOMERY, J. (dissenting).

FRANCHINI, J. (joining in dissent).

MONTGOMERY, Justice (dissenting).

In *State v. Davis,* 97 N.M. 130, 637 P.2d 561 (1981), quoting from *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), this Court said: "[The] Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged." *Davis,* 97 N.M. at 132, 637 P.2d at 563 (quoting *Winship,* 397 U.S. at 364, 90 S.Ct. at 1073) (emphasis added). In the present case, the Court, applying *Swafford v. State* (cited in the majority opinion) and seeking to avoid the strictures of the Double Jeopardy Clauses of our state and federal constitutions, says: "CDM requires proof of a fact not required to prove CSCM" (italics omitted) and "CDM requires proof that the act of defendant contributed to the 'delinquency' of a minor" and "Contributing to delinquency, therefore, is a fact separate from an unlawful sexual touching...."

The question thus arises: Where is the evidence to prove a fact not required to prove CSCM—to prove that defendant's acts contributed to either boy's delinquency? The answer: There is none.

The majority concedes as much. The majority acknowledges that "the State did not present any separate evidence ... that Trevino's acts of sexual contact caused or tended to cause or encourage delinquency on the part of either of the two minors involved." The majority is on sound ground in making this concession. It correctly appraises the State's position because, among other things, the prosecutor told the jury in his opening statement that criminal sexual contact was the basis for the CDM charge.[1] In fact, as the evidence at trial revealed, the boys were not induced to consent willingly to defendant's sexual advances, did not enjoy or participate in the conduct, were not persuaded to regard it as appropriate, and were in fact

---

1. The prosecutor's theory was carried forward into the trial court's instructions to the jury. The court instructed the jury that, to find defendant guilty of contributing to each boy's delinquency, the State had to prove to the jury's satisfaction beyond a reasonable doubt each of the following two critical elements of the crime: (1) that defendant "touched the penis" of J.J. and "touched the penis and buttocks" of J.C., and (2) that these acts caused or encouraged J.J. and J.C. to conduct themselves in a manner injurious to their morals. *See* SCRA 1986, 14–601 (Uniform Jury Instruction on elements of CDM). As described in the text, there was no evidence apart from the touchings that those touchings caused or encouraged either minor to conduct himself in a manner injurious to his morals.

frightened by defendant's acts. J.J. testified that he did not like being touched and was afraid to say anything because defendant might "do something" to him. J.C. testified that he was scared when defendant touched him and did not know how to handle the situation.

Thus, even though the majority professes to hold (again, to avoid the double jeopardy problem) that contributing to the delinquency of a minor requires proof of a fact not required to prove criminal sexual contact of a minor, in the end the majority states that the different facts to establish the different offenses may be proved by the same evidence. To the question, what evidence was adduced in this case to prove a fact different from the fact that defendant committed CSCM?, the majority answers: evidence that defendant committed CSCM. I cannot accept this self-contradictory analysis.

In lieu of evidence, the Court offers the jury's "common sense" and "the sense of decency, propriety, and morality which most people entertain." Now, I fully agree that in deciding whether the State in a criminal case has carried its burden to prove, beyond a reasonable doubt, every element of the crime with which the defendant is charged, see State v. Garcia, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 317–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)), the jury should apply its common sense—and perhaps even its sense of decency, propriety, and morality—to the evidence before it. However, these qualities are not *substitutes* for evidence; they are attributes that every jury brings to a case and that we expect the jury to use in deciding whether the *evidence* does or does not establish the defendant's guilt.

The majority turns this requirement for evidence on its head, saying "While it may be helpful for the jury to hear evidence on whether a particular act tends to cause or encourage delinquent behavior either generally or with respect to the particular victim, such evidence is not required in the jury's exercise of common sense." In other words, to enable a jury applying its common sense to determine that the defendant's act did not contribute to delinquency, it is incumbent *on the defendant* to adduce evidence that his or her act did not contribute to the minor's delinquency. This effectively shifts the burden of proof to the defendant and is unconstitutional, as established by, among other cases, Jackson v. Virginia.

The majority states, "While unlawful sexual touching of a minor factually may evince a tendency to cause or encourage delinquency, . . . it does not do so as a matter of law." As a practical matter, however, the majority's holding in this case makes the commission of CSCM *ipso facto* the commission of CDM. An accused who is charged with CSCM automatically is guilty, under the majority's holding, of CDM (at least if the jury, without the benefit of any evidence on the subject, so declares). I find no such per se equivalence between the two offenses in our statutes, and I disagree that commission of the former may be tantamount (depending on what the jury may find when it consults its common sense) to commission of the latter.

The majority says that "[i]f the jury finds that the defendant's conduct violated the community sense of decency, propriety, and morality, the jury may infer an adverse impact on the minor." Similarly, the majority relies on the State's position that sexual abuse and exploitation of minors have "many serious consequences to their future well-being." But there was no need for the jury to draw inferences along these lines; there was direct testimony from each boy's mother that her son's experiences with defendant caused him to suffer adverse effects. J.C.'s mother testified that he was crying, shaking, and babbling incoherently following his last encounter with defendant; J.J.'s mother testified that he began throwing temper tantrums and bed-wetting following revelation of defendant's sexual activities.

These, however, in my opinion, are precisely the kinds of adverse impact that the statute proscribing CSCM is intended to prevent. To the extent that the majority opin-

ion implies that the only purpose of the CSCM statute is to protect a minor's bodily integrity and personal safety, I respectfully disagree. I believe that the statute also protects against the kind of emotional and psychological trauma that is such a well-known result of sexual abuse and that is exhibited in the record of this case. However, the statute proscribing CDM criminalizes conduct that causes or tends to cause or encourage the *delinquency* of a minor. The Uniform Jury Instruction, given in this case (*see supra* note 1), requires an accused to refrain from conduct *injurious to the morals* of the minor.[2] I reiterate: No evidence in this case established or tended to establish that defendant's conduct resulted in any of the adverse effects contemplated by either the CDM statute or the Uniform Jury Instruction.

The majority draws some support for its per se equivalence between CSCM and CDM from this Court's dictum in *State v. Dodson* (cited in the majority opinion) that "We can conceive of few acts which would more manifestly tend to cause delinquency than those charged here."[3] The majority also says that in none of the New Mexico cases cited in its opinion is any reference made to any evidence beyond proof of sexual conduct with a minor. This latter statement, while perhaps true in a broad sense, is clearly not accurate to the extent it implies that touching or fondling *alone* has been treated as sufficient to convict for CDM. *Dodson* does not describe in any detail the "certain illicit sex practices" that the defendant there engaged in with the minor prosecutrix, but it appears in the opinion that there was "evidence of other acts with the prosecutrix similar in nature to those charged but occurring at times not covered in the indictment...." 67 N.M. at 148, 353 P.2d at 366. From this it may be inferred that the defendant and the victim's conduct had occurred over some period of time and had been willingly engaged in by the victim. Accordingly, there probably was sufficient evidence in the case to find that the defendant had caused the victim to engage in conduct injurious to her morals.

As for other New Mexico cases (and without dissecting them all), the majority's own parenthetical description of *State v. Corbin* (cited in the opinion) shows that the extensive "sexual conduct" engaged in by the defendant was sufficient at least to "encourage" the victim to engage in conduct injurious to his morals. Here, on the other hand, the effect of defendant's conduct was, as they testified, only to cause the boys to feel fear.

As for decisions elsewhere around the country, the cases seem to be split over the precise issue considered here, but there is certainly authority supporting the position adopted in this dissent. *See, e.g., State v. Stone*, 111 Or. 227, 226 P. 430, 433 (1924) ("An act which might lure one child into the paths of sin might prove repulsive and abhorrent to another, working out an exactly opposite effect."); *State v. Crary*, 155 N.E.2d 262, 265 (Ohio C.P. Lucas 1959) (defendant may not be convicted "for doing something which might just possibly sometime, somewhere lead to some child's becoming delinquent").

The majority allows a defendant to be convicted of CDM by proof only of the defendant's act, without reference to the effect of the act on the victim. Yet our Criminal Code defines many crimes in terms of the effect on the victim. *See, e.g.,* NMSA 1978, § 30–2–1 (Repl.Pamp.1984) (defining murder); § 30–

---

**2.** The Uniform Jury Instruction also describes other types of delinquent behavior that, depending on the facts of a particular case, may be caused or encouraged by the defendant, including commission of a crime, refusal to obey lawful commands or directions of persons in authority, and conduct injurious to the minor's health or welfare (in addition to his or her morals). *See* SCRA 1986, 14–601.

Perhaps the mothers' testimony concerning their sons' reactions to defendant's conduct would have been sufficient to support a jury finding that the conduct was injurious to each boy's "health" (*i.e.*, mental health) or "welfare," but the jury clearly was not instructed on any such theory.

**3.** To the extent this dictum can be read as saying that proof of touching a minor's intimate parts will *alone* support a conviction of CDM, I would expressly disapprove it.

3-4 (defining battery); § 30-4-3 (defining false imprisonment); § 30-6-1 (Cum.Supp. 1993) (defining abandonment or abuse of a child). I doubt that it is possible to determine whether a defendant in fact contributed to the delinquency of a minor without examining the effect of the defendant's conduct on the victim. Thus, for example, while offering liquor to one child might cause or tend to cause that child to become delinquent, another child might angrily refuse the offer and in no way be encouraged toward delinquent behavior. In the latter case (which obviously is not before us), I would be inclined to doubt that the perpetrator had contributed to the delinquency of a minor and that any conviction of that offense should be sustained.

I would not sustain Trevino's convictions of CDM in this case. The majority having done so, I respectfully dissent.

FRANCHINI, J., concurs.