This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **NO. 29,081**

**WILLIAM ZAMORA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant William Zamora appeals his convictions for two counts of criminal sexual contact of a minor (CSCM) and one count of contributing to the delinquency of a minor (CDM). Defendant argues that (1) the district court erred by allowing the hearsay testimony of Nurse Rosella Vialpando regarding statements that the victim made in an examination several weeks after the incident, (2) the State impermissibly commented on Defendant's right to silence by inquiring about his refusal to take a polygraph test without a lawyer present, (3) the two convictions for CSCM violated the constitutional protections against double jeopardy because they arose out of a single continuous incident, (4) the conviction for CDM and convictions for CSCM violate the constitutional protections against double jeopardy because they arose out of a single continuous incident, (5) the district court erred by introducing evidence of prior, uncharged allegations against Defendant during sentencing, and (6) the district court erred in denying Defendant's motion for reconsideration of sentence and refusing to run his sentences concurrent. We affirm.

**BACKGROUND**

Defendant was convicted of two counts of CSCM and one count of CDM. The convictions arose out of a series of events that took place while the victim was staying with her grandmother. At trial, the victim testified that Defendant lives with her grandmother. The victim testified that Defendant touched her vagina while on the

couch watching television at her grandmother's house. He later touched her again shortly thereafter in the car on the way to a gas station to get candy. After returning home from the gas station, Defendant touched the victim a third time. The touches were the basis of the CSCM convictions. The victim also testified that on the drive to the gas station, Defendant took out his penis and asked the victim to touch it. Defendant's CDM conviction arose out of these actions.

**HEARSAY TESTIMONY OF SEXUAL ASSAULT NURSE EXAMINER (SANE)**

Over Defendant's hearsay objection, the State offered the testimony of Vialpando, a family nurse practitioner, as an expert in the field of "'child abuse sexual evaluations.'" Vialpando specializes in evaluations and examinations of children and developmentally delayed adults who have been victims of sexual abuse. Vialpando testified that she examined the victim several weeks after the incident when law enforcement referred the victim's parents to her after an investigation of the incident. She testified that her examinations typically begin with a "history," which she described as an interview regarding the details of the alleged incidents of sexual abuse. The purpose of the history is to assist Vialpando in determining "what parts of the body to look at, and it also determines which test I'm going to do" during the subsequent examination. In addition, Vialpando also questions the victim on the identity of the perpetrators for the purpose of "assessing [the] safety of the child."

Vialpando testified that the victim told her that Defendant "had given her a bad touch" more than once during the history. According to Vialpando's testimony, the victim told her that Defendant touched her in the vaginal area with his hand and over her clothes while in the car on the way to the gas station to get candy. The victim further told her that Defendant took his penis out and asked her to touch it on the drive to the gas station as well. Asked whether Defendant had touched her any other time, the victim told Vialpando that "[Defendant] 'touched me at home.'" Based on this history, Vialpando testified that she ordered tests for sexually transmitted diseases on the victim because of the potential for exchange of bodily fluids and gave the victim's mother a list of referrals for therapy. Defendant argues that Vialpando's testimony regarding the victim's history was inadmissible hearsay designed to bolster the victim's testimony and that the district court erred in allowing the testimony as "[s]tatements for purposes of medical diagnosis or treatment" under Rule 11-803(D) NMRA.

We review the admission of evidence under an abuse of discretion standard. *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. An abuse of discretion occurs when the district court's decision is clearly against the logic and effect of the facts and circumstances of the case. *State v. Lucero,* 98 N.M. 311, 314, 648 P.2d 350, 353 (Ct. App. 1982).

In *State v. Mendez,* 2010-NMSC-044, __ N.M. __, 242 P.3d 328, our Supreme Court recently addressed whether a SANE nurse's testimony regarding statements of an alleged sexual abuse victim was admissible under Rule 11-803(D). Our Supreme Court held that a district court must "sift[] through statements, piece-by-piece, making individual decisions on each one . . . to evaluate the trustworthiness of each . . . statement[], taking into consideration [the alleged victim's] help-seeking motivation and the pertinence of such statements to medical diagnosis or treatment." *Mendez*, 2010-NMSC-044, ¶ 46. In so holding, *Mendez,* ¶ 1, overruled *State v. Ortega*, 2008-NMCA-001, ¶¶ 16-27, 143 N.M. 261, 175 P.3d 929, which had previously held that a SANE nurse's testimony was categorically inadmissible because criminal investigation is the primary purpose of the examinations. Our Supreme Court stated that *Ortega's* focus on the primary purpose of the examination was inconsistent with Rule 11-803(D)'s dual rationales, which are (1) the inherent reliability of statements by a declarant seeking medical treatment based on a declarant's self-interest in obtaining proper medical attention and (2) the inherent reliability of statements reasonably relied upon and therefore pertinent to a medical diagnosis and treatment. *Mendez*, 2010-NMSC-044, ¶¶ 39, 20-21.

We cannot say that the district court erred in allowing Vialpando to testify regarding the details of the victim's history. Vialpando's testimony regarding the

victim's statements on where Defendant touched her, in what manner he touched her, and how many times he touched her are justified because they are pertinent to diagnosis and treatment of the victim. *Id.* ¶ 48 ("Knowing the patient's account of what happened to her body helps medical care providers determine the best way to proceed in diagnosing and ultimately treating any injury."). Indeed, when asked why she takes a history of each child, Vialpando testified that it "assist[s] . . . in diagnosing and treating the patient . . . [b]ecause . . . it tells me what parts of the body to look at, as well as which tests to order, and we also refer them out for counseling or therapy." Not only did Vialpando state that the history typically assists in diagnosis and treatment, she testified that it assisted her in this particular case. She stated that "I did my examination, and based on the information she gave me, I ordered lab tests."

Testimony regarding the statements of the victim to Vialpando that identified Defendant as the perpetrator are a separate issue. As the *Mendez* Court explained a statement "specifically identifying [the d]efendant as her abuser presents a much more difficult question." *Id.* ¶ 51. "As a general matter, statements of . . . identity are inadmissible under the hearsay exception for purposes of medical diagnosis or treatment." *Id.* ¶ 52. "However, . . . New Mexico recognizes an exception to this principle where the identity of the perpetrator is pertinent to psychological treatment, or where treatment involves separating the victim from the source of the abuse." *Id.*

¶ 53. Asked why she inquires about the identity of the alleged perpetrator as part of the child's history, Vialpando responded that she asks for the perpetrator's identity in "assessing for [the] safety of the child, which is one of the components of diagnosing and treating." We therefore cannot say that the district court erred in allowing Vialpando's testimony as to the victim's statements regarding Defendant's identity as the perpetrator.

**COMMENT ON RIGHT TO SILENCE**

Defendant next argues that the State impermissibly commented on his right to silence by inquiring on cross-examination about Defendant's refusal to take a polygraph test without his lawyer present and again in closing argument by stating that Defendant could have obtained his own polygraph test. Indeed, on cross-examination, the State asked Defendant, "[n]ow, you mentioned a polygraph test. Isn't it true that [the detective] had asked you, '[w]ould you be willing to take one this time,' when you met him, and you had stated, '[w]ell, I want my lawyer present if I'm going to take one.' Isn't that right?" Further, in the rebuttal closing argument, the State told the jury "[Defendant] brought up this idea of a polygraph. Well, we know that when [Defendant] met with the detective, let's take one now. No, let's not take one now. I want my lawyer here. Oh, that's interesting. Okay. And you know what? Last time the State checked, it's a free country. If you want a polygraph, get a

7

polygraph. Get a polygraph. There's no polygraph."

Defendant concedes that he did not object to the State's comments or inquiries on Defendant's invocation of the right to silence. We therefore review for fundamental error. *State v. DeGraff*, 2006-NMSC-011, ¶ 12, 139 N.M. 211, 131 P.3d 61 ("In the absence of a timely objection from a defendant, comments on a defendant's . . . right to remain silent, are reviewed for fundamental error.").

Generally, "[w]hen a defendant has invoked [his] right to remain silent after being given *Miranda* warnings, use of that silence by the prosecution at trial violates due process." *State v. Foster*, 1998-NMCA-163, ¶ 11, 126 N.M. 177, 967 P.2d 852. Our Supreme Court has held that a reference to a defendant's refusal to take a polygraph in a prosecutor's opening statement is an impermissible comment on the defendant's right to silence. *State v. Gutierrez*, 2007-NMSC-033, ¶ 17, 142 N.M. 1, 162 P.3d 156. However, "New Mexico recognizes the 'invited-response' doctrine," under which a defendant may open the door to comments by a prosecutor that would otherwise be reversible error. *State v. Pennington*, 115 N.M. 372, 381, 851 P.2d 494, 503 (Ct. App. 1993); *cf. State v. Henry*, 101 N.M. 266, 267, 681 P.2d 51, 52 (1984) ("[I]t is also the rule that the prosecution may refer to the defendant's failure to testify if the door is opened by the defense.").

The State's comments on Defendant's refusal to submit to a polygraph test

without a lawyer present were permissible under the invited-response doctrine because Defendant "'opened the door'" by his own argument. *State v. Sosa,* 2009-NMSC-056, ¶ 33, 147 N.M 351, 223 P.3d 348.  It was Defendant who first raised the issue of a polygraph test not being taken in his opening argument.  Defense counsel stated that "[w]e could have expected a polygraph examination, perhaps, but that wasn't done."  Further, on direct examination of Defendant, the following exchange took place:

Q.	Did you offer to submit to a polygraph examination?

A.	Yes, I submitted to—I offered a detective a polygraph test.

Q.	Were you able—ever afforded a polygraph examination in this case?

A.	No.

It was only after this exchange that the State questioned Defendant on his invocation of the right to a lawyer before submitting to a polygraph test on cross-examination.  Further, before the State mentioned Defendant's refusal to submit to the polygraph test without a lawyer present in rebuttal closing, defense counsel stated in closing that the jury should consider the question of "why there wasn't a polygraph in this case. There wasn't.  And [Defendant] testified he was ready to take —he had asked for a polygraph, so that didn't happen.  Would that have been helpful?  Probably."

**DOUBLE JEOPARDY**

Defendant argues that (1) his convictions of two counts of CSCM violated

double jeopardy protections because the conduct that was the basis for both counts arose out of a single continuous incident, and (2) his convictions for CDM and CSCM violated double jeopardy protections because the basis of both charges arose out of a single continuous incident. In determining whether a defendant's double jeopardy rights were violated, we apply a de novo standard of review. *State v. Bernal,* 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

In addressing Defendant's argument that his convictions for CSCM and CDM violate double jeopardy, we apply a two-part test: (1) we examine whether the conduct was unitary, meaning that the same criminal conduct is the basis for both charges, and (2) if the conduct is unitary, we examine whether the Legislature intended multiple punishments for unitary conduct by examining whether the elements of one statute are subsumed by the other. *Swafford v. State,* 112 N.M. 3, 13-14, 810 P.2d 1223, 1233-34 (1991).

In *State v. Trevino*, 116 N.M. 528, 534, 865 P.2d 1172, 1178 (1993), our Supreme Court addressed whether convictions for CSCM and CDM violate the test enunciated in *Swafford*. It held that even if the conduct that served the basis for the CSCM and CDM convictions was unitary, separate convictions for CDM and CSCM do not violate double jeopardy because each charge requires proof of an element that the other does not. *Trevino*, 116 N.M. at 534, 865 P.2d at 1178. Indeed, the jury in

10

the present case was instructed that the elements the State had to prove for conviction of CSCM were that (1) Defendant touched or applied force to the groin or genital area of the victim, (2) the victim was 12 years of age or younger, and (3) Defendant's act was unlawful. Further, the jury was instructed that the elements the State had to prove for conviction of CDM were that (1) Defendant exposed his penis to the victim, (2) this caused or encouraged the victim to conduct herself in a manner injurious to her morals, health, or welfare, and (3) the victim was under the age of 18. As the CDM conviction did not require the application of an unlawful touch, and the CSCM conviction did not require that the State prove that the actions caused or encouraged the victim to conduct herself in a manner injurious to her morals, health, or welfare, the separate convictions did not violate double jeopardy, as each required a distinct element.

In addressing Defendant's argument that the two convictions for CSCM violated double jeopardy, we examine whether Defendant's acts that served the basis for each conviction are unitary, meaning that they are not separated by a sufficient indicia of distinctiveness. *Bernal*, 2006-NMSC-050, ¶ 14. Defendant concedes that the basis of one conviction was for touching the victim in the car on the way to the gas station and the second was for touching the victim at her grandmother's home. Our Supreme Court has identified a number of factors to apply in determining whether

conduct was unitary. *See Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991) (directing courts to consider the (1) the temporal proximity between acts, (2) the location or movement between acts, (3) the existence of an intervening event, (4) the sequencing of the acts and in sexual abuse cases, whether the acts were to the same orifice of the victim, (5) the defendant's intention, and (6) the number of victims).

Using these factors as a guide, Defendant's touch at the victim's grandmother's home and the touch in the car on the way to the gas station have a sufficient indicia of separateness for two convictions and are therefore not unitary. First, the acts were separated by the time it took Defendant to invite the victim to go to the gas station and get her into the vehicle. Second, each touch took place at a separate location. Third, the acts were separated by the existence of intervening events, specifically Defendant inviting victim to the gas station to get candy and getting the victim into his vehicle. The cases Defendant relies upon are distinguishable. In *State v. Segura*, 2002-NMCA-044, ¶¶ 1, 5, 132 N.M. 114, 45 P.3d 54, this Court reversed the defendant's convictions of two counts of CSCM for twice pulling the victim's hand toward his groin. The only separation between the acts was the victim pulling her hand away and the defendant making sexually suggestive comments. *Id.* ¶ 4. Similarly, in *State v. Laguna*, 1999-NMCA-152, ¶ 38, 128 N.M. 345, 992 P.2d 896, the basis for separate

12

CSCM convictions was evidence that the defendant rubbed the victim's leg, moving up toward his crotch several times "in a continual manner." Noting that the touchings occurred over a very short period of time and there were no intervening events, this Court held that the defendant could only be convicted of one count of CSCM. Our present case is therefore distinguishable by the time between the touchings, the intervening events, and the different locations of the touchings that formed the basis of the separate convictions.

**SENTENCING ISSUES**

Defendant argues that the district court erred by considering evidence of prior, uncharged allegations that Defendant had previously touched children during the sentencing hearing. Defendant maintains that the allegations of prior, uncharged conduct were inadmissible pursuant to Rules 11-403 and 11-404(B) NMRA. However, the rules of evidence do not apply in "sentencing by the court without a jury." Rule 11-1101(D)(2) NMRA. It was therefore proper for the district court to consider the prior allegations during sentencing.

Defendant also asserts that the district court erred in denying his motion for reconsideration, in which he asked the court to run his sentences concurrent instead of consecutive. Though Defendant asserts that the district court violated his due process rights in refusing to reconsider his sentence, he fails to cite authority

13

supporting his argument. We therefore will not consider this argument. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that when a party cites no authority to support an argument, we may assume no such authority exists); *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority).

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**ROBERT E. ROBLES, Judge**